scoop, which was very heavy involving a lift of two hundred pounds, and within three minutes afterwards collapsed over the steering-wheel of his truck and died on the employer's premises. Dr. Murray testified that in his professional opinion the death was caused by lifting the heavy scoop. His positive testimony was that such was his professional opinion, not merely that the death might have resulted or that it probably resulted from that cause, but it actually so resulted.

The judgment is affirmed.

---

## Boles *v.* Federal Electric Company, Appellant.

*Negligence—Fall of concrete from high building—Case for jury—Evidence.*

In an action of trespass to recover damages for personal injuries, it appeared that the plaintiff was struck by a piece of concrete which fell from the roof of a building upon which defendant's employees were engaged in chipping concrete. It also appeared that no other work was being done on the building; that other pieces of concrete were seen falling from the place where defendant's employees were working; and that the work was being done directly above a place provided for loading and unloading wagons.

Under such circumstances, the case was for the jury and a verdict for the plaintiff will be sustained.

Where in such a case, the plaintiff alleged in his statement that he was "wounded on the head and sustained a fracture of the skull and a concussion of the brain," it was not error to admit evidence of an injury to plaintiff's ear. The statement sufficiently informed the defendant of the main features and situation of the injury.

Records and time sheets compiled from reports made by persons not called as witnesses, are properly excluded from evidence, as being hearsay.

*Practice C. P.—Affidavit of defense—Failure to answer—Allegations of defendant's statement—Practice act—Amendment—Statute of limitations.*

In an action of trespass, plaintiff averred in his statement that he was struck by a piece of concrete caused to fall by the negligence of the defendant, its servants, agents, etc. The defendant averred in its affidavit of defense that "plaintiff was not struck with a piece of concrete—caused to fall by reason of the carelessness of the defendant, its servants, agents, etc."

In such case the allegations of the statement concerning the person by whom the act was committed and the agency or the employment of such person, were not denied in the affidavit.

The defendant will not be permitted to amend its affidavit of defense, to the prejudice of the plaintiff, after the statute of limitations has run.

Argued October 13, 1926. Appeal No. 127, October T., 1926, by defendant, from judgment of C. P. No. 4, Philadelphia County, June T., 1923, No. 2325, in the case of James Boles v. Federal Electric Company, a corporation. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Trespass to recover for personal injuries. Before FINLETTER, J.

The facts are stated in the following opinion of the court below.

Plaintiff sued to recover damages for personal injuries, which he alleged resulted from defendant's negligence.

1. Defendant moves for judgment in its favor n. o. v., and for a new trial; and assigns as reason a ruling of the trial Judge, that there was no sufficient denial in the affidavit of defense of the agency or employment of the persons by whom the negligent act was committed.

Section 13 of the Practice Act of 1915, page 485, provides that: "In actions of trespass the averments, in the statement, of the person by whom the act was committed, the agency or employment of such person, ......if not denied, shall be taken to be admitted, in accordance with Section six." Section six provides: "Every allegation of fact in the plaintiff's statement, ......if not denied specifically or by necessary implication, shall be taken to be admitted."

It was averred, in paragraph one, of plaintiff's statement that: "1. At the time of the happening of

the matters hereinafter complained of, the defendant was a body corporate, and was engaged in the construction and erection of an electric sign upon the west wall of certain premises named." And in paragraph two of the statement: "That on March 9, 1923, plaintiff. .,. ... was struck. .,. .... with a piece of concrete, etc., caused to fall by the negligence of the defendant, its servant, agents, etc., engaged in the construction and erection of the said electric sign."

To these averments, the defendant answered, in the affidavit of defense:

"1. Denied. No employe of the defendant was engaged in any work that directly or indirectly caused injury to the plaintiff, but on the contrary, an investigation made as a result of this improper demand, shows that the plaintiff was injured in the manner hereinafter more fully described." "2. Denied. The plaintiff was not struck with a piece of concrete, stone or other object or substance which was thrown, dropped or caused to fall by reason of the carelessness, etc., of the defendant, its servants, agents, etc., as alleged in the statement of claim, but on the contrary deponent is advised that the plaintiff fell as a result of the slipping or breaking of a certain plank, upon which he was standing loading ashes, and the defendant had no connection therewith whatsoever."

. The trial Judge was of opinion, and the opinion is shared by the Court in banc, that the allegations of the statement concerning the "person by whom the act was committed" and the agency, or employment of such person, were not denied specifically or "by necessary implication" in the affidavit.

The word "denied," as applied to an averment of several necessarily connected facts, has never been regarded as sufficient. Section 8 of the Practice Act provides that: "It shall not be sufficient...... to deny generally the allegations of the statement of

claim,.. ... .... Each party shall answer specifically each allegation of fact of which he does not admit the truth.'' Pittsburgh Block Coal Co. v. Oliver Coal Co., 259 Pa. 290; Buehler v. U. S. Fashion Plate Co., 269 Pa. 428; Amram on the Practice Act, page 49; Herron v. Florence Presbyterian Church, 27 D. R. 1025.

A general denial controverts the paragraph as a whole, and would be quite truthful, if but a fraction of the allegations answered were incorrect: Fulton Farmers Assn. v. Bomberger, 262 Pa. 43, 46; Amram on the Practice Act, pages 58 and 59.

The denial that any employe of the defendant directly or indirectly caused the injury might mean, either that the actor was not an employe of the defendant, or that, being the employe, he did not cause the injury.

. The agency, for the defendant, of the persons by whom the act was committed, that is, their employment by it was, in our opinion, properly taken by the trial Judge as an admitted fact. Of course, this carried with it no proof that these agents committed the act complained of, or that they were negligent, and the trial Judge so limited the admission, saying only that, ''The defendant, the Federal Electric Company, has admitted that it was its men who were doing this work.''

Counsel for the defendant asked leave to amend ''to the effect that we were not in the premises at the time.'' Passing the point that such an amendment would not have made the affidavit effective, we are of opinion that an amendment could not, with justice, have been permitted at this late date. Four years had elapsed since the accident, when the motion was made; and two years since the case was put at issue. In the meanwhile the statute of limitations had run, and a suit against any other person was barred. In other words, the plaintiff through the careless pleading, if it was

careless pleading, of the defendant was deprived of all chance to recover for the serious injuries he had suffered. There is reason for requiring from a defendant, in such a case as this, a prompt and certain statement of his relation to the individual whose negligence causes injury to a plaintiff. The employment of such a person, his, and his immediate employer's, relation to the work in question, are matters nearly always unknown to the injured person. Whether the immediate actor is working on his own account, or is an agent for a third person, and who that third person is, and also the latter's relations to the work, depend so often upon private contracts, that the injured party is at a loss to know who, in fact, is at fault. This was recognized by the draughtsman of the practice act, when he provided in Section 13, for specific averments on this subject, while he left the other allegations for proof at the trial.

2. A second reason given by defendant for judgment n. o. v. is that "there is no proof of negligence." The plaintiff was struck by the fall of a piece of concrete from the top of a very high building. The jury were instructed that the mere fall of the object did not establish negligence, and that there must be other proof before they could convict the defendant of that charge. There was other proof. It was shown that the work on which defendant's employes were engaged, and only that work, was in process, and that, directly over a place provided for loading and unloading wagons; in other words, where people might be expected to be, and where the plaintiff was. No other work was being done on the building. The work on the roof was, in part, the chipping of concrete. It was in process at a point where it was likely that fragments of concrete could easily fall. An eye witness testified that he saw the piece (and others shortly before) fall from the place where the

defendant's employes were at work. A piece had fallen the day before. And complaint had been made to the person in charge of the building. We are of opinion that the continued falling of dangerous fragments was evidence of a careless handling of the work. We cannot see the analogy between the case before us and the case of Fleccia v. Atkins, 270 Pa. 573, and Laven v. Moore, 211 Pa. 245, to which the defendant refers. In these cases it appeared that other sources of the falling objects existed, and were not excluded from causal connection with the injury. In the present case two facts limit the source of the falling object to the activities of the defendant's agents, one, that they alone were working on the roof, at the spot whence the object fell; and, two, their work was chipping out concrete, and it was a fragment of concrete that fell. In this respect the case is stronger than Booth v. Dorsey, 208 Pa. 276. Nor is the matter complicated by the fact that the defendant employed a sub-contractor or agent to do part of the work. The main contract was not offered in evidence. So that we are left in ignorance of the status of the defendant with regard to whole work, of which it might very well have reserved the control. The only proof, and it is adequate, is that contained in defendant's admission of the employment by it of the person by whom the act was committed.

3. The admission of evidence of injury to plaintiff's ear, in the absence of a particular allegation of such an injury, was also criticized by the defendant, but we think without foundation. The allegation was that plaintiff was "wounded on the head and sustained a fracture of the skull and a concussion of the brain." The proofs were, that he had a severe concussion of the brain, accompanied by total unconsciousness lasting several days, and later followed by a buzzing in

the head or ear, and a flow from the ear. The chief trouble was the concussion; and the ear condition was an incidental manifestation of it. Sufficient was said in the statement to inform the defendant of the main features and situation of the injury, and to comply with the statutory requirement for a "concise statement" of the cause of action.

4. It is also argued that the Court erred in excluding records and time sheets, kept by the sub-contractor, showing the place and time his employes worked. These lists were compiled from reports made by other persons, not called as witnesses, and were plainly hearsay.

5. Lastly, the defendant complains of the size of the verdict. The plaintiff was struck upon the head by a piece of concrete that fell from the roof of a building twelve stories high. He was thrown from his wagon, down into an areaway. He lay unconscious from Friday until Sunday. He had a very severe concussion of the brain, so severe that it was necessary to tap his spine to draw off fluid to relieve the brain. After his discharge from the hospital he was obliged to return eight or ten times for treatment of his ear from which there was a discharge of pus and serum. He was kept from work for fourteen weeks, losing in wages $448. While the allowance for pain of the injuries, and the operation and the succeeding sickness was full, we are not prepared to say that it was shocking to our sense of justice. The defendant's motions are therefore denied.

Verdict for plaintiff in the sum of $2500 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were the various rulings on evidence and refusal of defendant's motion for judgment n. o. v.

*John J. McDevitt, Jr.,* and with him *Nochem S. Winnet,* for appellant.

*William Charles Brown,* for appellee.

PER CURIAM, October 26, 1926:

The judgment of the court below is affirmed on the opinion of Judge FINLETTER.

---

# Prettyman *v.* Philanthropic Mutual Life Insurance Company, Appellant.

*Insurance—Life insurance—Attachment of application to policy—Act of May 11, 1881, P. L. 20—Proofs of loss—Health of insured at time policy was issued—Evidence.*

Under the provisions of the Act of May 11, 1881, P. L. 20, an application to a policy of insurance is not admissible in evidence unless it is attached to the policy.

In an action of assumpsit upon a life insurance policy, a certificate of the Bureau of Vital Statistics stating that the insured died of chronic myocarditis, without evidence tending to establish the symptoms of that disease, or how long the insured suffered from the disease before his death, is insufficient evidence on which to permit a jury to pass upon the issue of whether or not the insured was in good health at the time the policy was issued.

Where, in such case, the defendant did not offer the entire proofs of loss, it was not error for the Court to exclude an affidavit made by a physician who attended the insured in his last illness, in the absence of any evidence to show how it had come into the possession of the defendant. If the affidavit was a part of the proofs of loss, furnished by the plaintiff, the defendant was not at liberty to select a single item from those proofs without at the same time offering the entire proofs, for the plaintiff was entitled to the benefit of any statement in the proofs, which challenged the correctness of the statement of the attending physician.

Argued October 18, 1926. Appeal No. 198, October T., 1926, by defendant, from judgment of M. C. Philadelphia County, March T., 1925, No. 508, in the case of Dora Prettyman, vs. Philanthropic Mutual Life Insurance Company. Before, PORTER, P. J.