362 A.2d 280

Lawrence J. WILLINGER, Jr., Administrator of the Estate of Leonard Willinger, Deceased, Plaintiff-Appellee,

v.

MERCY CATHOLIC MEDICAL CENTER OF SOUTH-EASTERN PENNSYLVANIA, FITZGERALD MERCY DIVISION, Defendant-Appellant,

and

Dr. Martin T. Brennan and Dr. Josephine L. Go, Additional Defendants-Appellees.

Superior Court of Pennsylvania.
June 28, 1976.

F. Kirk Adams, Springfield, for defendant-appellant.

Jeffr\. ~ M. Stopford, Philadelphia, for plaintiff-appellee.

John S. J. Brooks, Media, for additional defendants-appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

On June 26, 1974, a Delaware County jury awarded appellee-Lawrence J. Willinger, Jr., ("plaintiff", herein), a verdict of $455,199.75, in a wrongful death and survival action for the death of Leonard Willinger, against appellant, Mercy Catholic Medical Center ("defendant", herein.) Appellant contends that the court erred in refusing to allow an amendment to its third party com-

plaint against appellees Dr. Brennan and Dr. Go ("additional defendants", herein) during trial and that the court erred in its jury charge.

There is no dispute about the tragic facts which led to this lawsuit. On June 2, 1969, plaintiff's five-year-old son, Leonard, entered defendant-hospital for a tonsillectomy. The boy was examined on the day of the operation and, medical records indicate, was in excellent health. In preparation for the operation which was to be performed by additional defendant-Brennan, the child was placed under anesthesia by a nurse-anesthetist under the supervision of additional defendant-Go, an anesthesiologist. Apparently, additional defendant-Go was then called to an emergency operating room to treat another patient. Thereafter, as all parties agree,[1] the nurse-anesthetist negligently monitored administration of the anesthesia. When additional defendant-Brennan arrived in the operating room, he noticed that the child had the "color of a cadaver" and that his heart had stopped beating. The nurse-anesthetist was still administering a full dose of anesthesia and, although she was stationed near the child, she was not using her stethescope to monitor his heartbeat.

At that point, additional defendant-Brennan performed emergency resuscitative procedures. The child's heart quickly returned to a normal rate; as a result of the prolonged heart stoppage,[2] however, the child suffered from serious brain damage. On July 23, 1969, never having recovered from this tragedy, the child died.

On November 6, 1969, plaintiff filed a complaint in trespass solely against defendant. On January 14, 1970,

1. Defendant states in its brief that "[t]he parties, basically, agreed that the nurse-anesthetist was careless in the performance of her professional duties for the decedent and that her carelessness most probably led to the death of the decedent."

2. Testimony indicated that the boy's heart had stopped from between four and twenty minutes.

defendant filed a praecipe for a writ to join Dr. Brennan and Dr. Go as additional defendants. Defendant filed its answer to the complaint on March 16, 1970. During the next fifteen months, the parties conducted extensive discovery. In September, 1972, defendant filed its complaint against the additional defendants. After further discovery, the matter was finally tried in June, 1974. On June 26, 1974, the jury awarded plaintiff damages in the amount of $455,199.75. This appeal followed the denial of defendant's post-trial motions.

As the facts indicate, negligence of the nurse-anesthetist could not be seriously contested. Thus, the critical issue at trial was the agency of the nurse-anesthetist. The first issue raised by defendant is whether the defendant admitted agency of the anesthetist in its pleading.

Plaintiff made the following allegations in this complaint:

"3. On or about June 2, 1969, defendant through its agents, servants and employees, acting within the course and scope of their employment, did so carelessly and negligently treat said Leonard Willinger . . . that he developed a serious and permanent injury resulting in his death.

"4. The negligence and carelessness of Defendant through its agents, servants and employees consisted of the following. . . ." The defendant answered as follows:

"3. The allegations in paragraph #3 of the Plaintiff's Complaint . . . is denied and on the contrary, it is averred that no agents, servants or employees of the Defendant acted carelessly and negligently in treating the said minor.

"4. The allegations of the Plaintiff's Complaint are denied by operation of law and it is further denied that

any agents, servants, or employees of the said Defendant acted carelessly and negligently."

Under Pennsylvania procedure, a defendant in a trespass action can avoid a default judgment merely by filing an entry of appearance. Failure to file a responsive pleading does not admit liability for negligence; it does, however, "admit all averments relating to the identity of the person by whom a material act was committed, *the agency or employment of such person* or the ownership, possession or control of the property or instrumentality involved." Pa.R.C.P. 1045(a). (Emphasis added). It is apparent that if a defendant in a trespass action wishes to deny agency, he must file an answer. Once an answer is filed, however, it must conform to the procedural rules relating to actions in assumpsit, because there are no specific rules governing answers in trespass actions. Pa.R.C.P. 1041. In particular, Rule 1029 requires that a denial to an allegation in the complaint must be specific if it is an averment which requires a response. Rule 1029(b) provides that "[a] general denial . . . shall have the effect of an admission." Implicit in Rules 1045(a) and 1029(b) is that if a party intends to deny agency of another person in a trespass action, it must make a specific denial. Thus, we must decide whether paragraphs 3 and 4 of defendant's answer, supra, amounted to a specific denial.

On its face, defendant's denial is ambiguous. "[I]t is averred that no agents, servants or employees of the Defendant acted carelessly and negligently in treating the said minor," permits two readings: one, that although all the people performing the operation were defendant's employees, none of them were negligent; or, two, that whether or not someone was negligent, the people performing the operation were not defendant's employees. In *Boles v. Federal Electric Co.*, 89 Pa.Super. 160 (1926), involving an identical situation, this Court

held that an ambiguous denial did not comport with the rule requiring a specific denial and, thus, constituted an admission of agency.[3] We stated in *Boles*, supra at 163: "[t]he denial that any employe of the defendant directly or indirectly caused the injury might mean, either that the actor was not an employe of the defendant, or that, being the employe, he did not cause the injury.

"The agency, for the defendant, of the persons by whom the act was committed, that is, their employment by it was, in our opinion, properly taken by the trial judge as an admitted fact. Of course, this carried with it no proof that these agents committed the act complained of, or that they were negligent, and the trial Judge so limited the admission, saying only that, 'The defendant, . . . has admitted that it was its men who were doing this work.'" Thus, the court below was correct in holding that defendant had admitted agency. The defendant was, therefore, properly found liable to the plaintiff once it was established that the nurse-anesthetist was found negligent.

**3.** See *Boles v. Federal Electric Company*, 89 Pa.Super. 160, 161–62 (1926): "It was averred, in paragraph one, of plaintiff's statement that: '1. At the time of the happening of the matter hereinafter complained of, the defendant was a body corporate, and was engaged in the construction and erection of an electric sign upon the west wall of certain premises named.' And in paragraph two of the statement: 'That on March 9, 1923, plaintiff . . . was struck . . . with a piece of concrete, etc., caused to fall by the negligence of the defendant, its servant, agents, etc., engaged in the construction and erection of the said electric sign.'

"To these averments, the defendant answered, in the affidavit of defense:

"'1. Denied. No employe of the defendant was engaged in any work that directly or indirectly caused injury to the plaintiff, but on the contrary, an investigation made as a result of this improper demand, shows that the plaintiff was injured in the manner hereinafter more fully described.' '2. Denied. The plaintiff was not struck with a piece of concrete, stone or other object or substance which was thrown, dropped or caused to fall by reason of the carelessness, etc., of the defendant, its servants, agents, etc., as alleged in the statement of claim, but on the contrary deponent is advised that the plaintiff fell as a result of the slipping or breaking of a certain plank, upon which he was standing loading ashes . . . .'"

Defendant also contends that it was error for the lower court to deny defendant's motion to amend its third party complaint at trial.

Defendant attempted to begin its defense during the trial by calling additional defendant-Go as on cross-examination. Upon request for an offer of proof, defendant explained that it intended to prove that the nurse-anesthetist was additional defendant's employee so that the additional defendant would be liable for the nurse-anesthetist's negligence. The additional defendant objected because defendant's third party complaint failed to allege vicarious liability on the part of the additional defendant, but alleged only personal liability. The court sustained additional defendant's objection. As discussed above, the court also ruled that the defendant's pleadings admitted agency.

At that point, defendant moved to amend its complaint against the additional defendant to allege specifically that the nurse-anesthetist was an agent of additional defendant-Go. The court refused to allow the amendment on the ground that to do so would be to permit addition of a new cause of action after the expiration of the statute of limitations.

■■ Obviously, the nurse could have been the agent of both defendant and additional defendant, *Tonsic v. Wagner*, 458 Pa. 246, 329 A.2d 497 (1974), and thus, the additional defendant and defendant could have been jointly and severally liable to plaintiffs. But rules of evidence require that proof at trial must be in conformity with the pleadings. See, e. g., *Higgins Lumber Company v. Marucca*, 159 Pa.Super. 405, 48 A.2d 48 (1946). Defendant's third party complaint clearly did not allege vicarious liability based on an agency relationship: "7. Additional defendant, Josephine L.C. Go., M.D., was the anesthesiologist assigned to Leonard Wil-

linger. The death of plaintiff's decedent was proximately caused by the negligence of Dr. Go in that she:

"(a) Administered an overdose of preoperative medication, including Vestiril, Demorol and Atropene.

"(b) Specifically with respect to the administration of the induction agent, probably anectine, either failed to administer such induction agent or administered such induction agent in an untimely manner.

"(c) Failed to properly and adequately personally supervise and/or conduct administration of pre-operative medication induction agent in general anesthesia.

"(d) Failed to leave proper and adequate instructions with respect to the monitoring of vital signs of plaintiff's decedent.

"(e) Failed to leave proper and adequate instructions, directions and other physician's orders with respect to general procedures to be followed with respect to the administration of anesthesia to plaintiff's decedent.

"(f) Departed from the operating room at a time when plaintiff's decedent was unconscious, thus rendering plaintiff's decedent in an unconscious state without the care of a duly qualified physician.

"(g) Failed to properly and adequately detect cyanosis and cardiac arrest and immediately institute resuscitive measures.

"(h) Was otherwise careless, negligent and guilty of malpractice and failed to adhere to the requisite standard of care.

"8. As a direct result of the negligence, carelessness and malpractice of additional defendants, Brennan and Go, plaintiff's decedent suffered brain damage secondary to hypoxia, anoxia and cardiac arrest, which eventually caused his death." The defendant concedes in its brief that its complaint alleged only additional defendants' direct, personal liability. "Unfortunately, the Defendant's Complaint did not set out a claim of vicarious lia-

bility based on agency as to either of the Additional Defendant doctors."

 Rules of procedure allow amendment of a complaint even if the request for the amendment is made during the ·trial. *O'Connell v. Roefaro*, 391 Pa. 52, 137 A.2d 325 (1958); Pa.R.C.P. 1033. However, as noted in *O'Connell*, supra at 6, 137 A.2d at 31, "[t]his was a matter for the discretion of the Court. . . . 'Procedural rules are not ends in themselves but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives.' " (citations omitted). See also, Pa.R.C.P. 126. Leave to amend liberally is "subject to the qualification that any amendment may not introduce a new cause of action after the statute of limitations has run its course." *Kuisis v. Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321, 325, 319 A.2d 914, 918 (1974).

 There can be little dispute that vicarious liability as an employer and liability for personal negligence are separate causes of actions, and as such, would require significantly different trial preparation. Thus, had the court allowed the amendment at trial, the additional defendant would have been seriously prejudiced. We note further that the parties engaged in extensive discovery during which defendant had ample opportunity to amend its complaint once it realized that agency would be critical to its defense. Finally, the court instructed that the jury could find additional defendant-Go liable for failure to supervise the nurse-anesthetist. Thus, the denial of the amendment did not deprive defendant of a cognizable defense.

 The defendant contends that, although the statute of limitations had run on plaintiff's claim of negligence, defendant's claim against the additional defendant was for contribution and indemnification, a right which would not accrue until judgment was entered against the

defendant. See *Kitchen v. Borough of Grampian*, 421 Pa. 464, 219 A.2d 685 (1966). Defendant misstates the issue. During its offer of proof at trial, defendant intended to show that additional defendant was solely liable as the nurse-anesthetist's employer; the attempt to examine the witness was not based on its right to contribution: " . . . it is the defendant's intention also to show, through Dr. Go's testimony somewhat, at least hope to show, that as a matter of fact on June 2, 1969, when Nurse Anesthetist . . . was in that operating room working under the direct supervision of Dr. Go, the additional defendant, she in fact was at that point Dr. Go's servant, and whatever she did, whatever conduct, whatever her acts were in the operating room, and including if she was guilty of carelessness or negligence, or failure to follow the standard of practice of anesthetists in Delaware County, Pennsylvania, in that time period, then that act was an act within the course of her employment of her position as a servant of Dr. Go's. . . . [W]e would like to be able to argue from at the end of the case and also get points for charge— that the jury could find Dr. Go to be vicariously responsible for that act of negligence under the doctrine of respondeat superior, as well as responsible personally for her failure to fully and completely supervise the anesthetist." Defendant's argument at trial precludes it from now contending that it was entitled to an amendment on the ground that it was entitled to indemnification.

Defendant also contends that the court erred in instructing the jury. Specifically, the court instructed the jury as follows: "Here are the three (3) items to consider. First, pain and suffering . . . the second item is compensation for the loss of future earnings for the working life expectancy of the deceased . . . the third item, any loss that may have been sustained as a result of the loss of the amenities of life.

" . . . We are not talking about the loss of life as such because loss of life is not compensable. What we are talking about is the loss of life's pleasures."

Defendant objected and took specific exception to that portion of the charge. In denying defendant's objection, the lower court stated that "[w]e will take our chances with the charge. I think that is what the law is. There is no appeal case that says this. There are some other cases that say it."

In its opinion, the lower court stated that "[t]he statutes of the Commonwealth of Pennsylvania do not define damages allowable in a survival action, although in the past our appellate courts have restricted such recovery to the pecuniary loss to the estate of medical expenses, loss of past and future earnings plus pain and suffering endured prior to death. *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659 (1942); *Mohler v. Worley*, 179 Pa. Super. 56, 116 A.2d 342 (1955)." See also, *Incollingo v. Ewing*, 444 Pa. 263, 307, 282 A.2d 206, 229 (1971). The foregoing seems to make clear that the court's charge was erroneous.

The lower court, however, believed that the traditional measure of compensable damage was inadequate in the instant case. The court analogized loss of life to situations in which a living litigant had been injured in a permanent manner: "Pennsylvania case law has permitted recovery for the permanent loss of individual senses . . .

"We feel that the total loss of all senses, as occurs in death, also requires compensation." The cited cases involve situations in which a defendant's negligence has resulted in the loss of physical enjoyment of life, but not in loss of life itself. See *Downie v. United States Lines Co.*, 359 F.2d 344 (3d Cir. 1966), cert. denied, 385 U.S. 897, 87 S.Ct. 201, 17 L.Ed.2d 130 (1966), (loss of eight years life expectancy); *Schwartz v. United States*, 230

F.Supp. 536 (E.D.Pa.1964), (facial cancer); *Frankel v. United States*, 321 F.Supp. 1331 (E.D.Pa.1970), aff'd, 466 F.2d 1226 (3d Cir. 1972) (brain damage); *Corcoran v. McNeal*, 400 Pa. 14, 161 A.2d 367 (1960) (amputation).

Thus, case law upholds the distinction between loss of life, in which case loss of life's amenities is not compensable, and impairment of a living person's faculties, in which instance such loss is recoverable.[4] Therefore, the lower court's statement of the law was erroneous. We resist the lower court's attempt to expand the right of recovery in wrongful death and survival actions to include loss of life's amenities. The problem of translating the loss resulting from an accident into money damages is always a complex and often imprecise calculation. However, our courts and legislature have established some guidelines to assist a jury in compensating loss— loss of life's pleasures or amenities is simply not one of the elements of recovery in wrongful death and survival actions.

As discussed above, we affirm the lower court's order as to liability. However, due to the court's erroneous charge, we remand for a new trial limited to damages.

---

4. See also, Pennsylvania Standard Jury Instructions, Civil, prepared by Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions, draft instructions, 6.01–6.22, relating to damages. Noticeably absent is any reference to loss of life's amenities in cases involving wrongful death or survival actions.