## Gilbert v. Cogan

Plaintiffs filed their complaint on January 17, 1977. On February 23, 1977, defendant Northeastern Hospital (hereinafter defendant) filed preliminary objections to the complaint and a memorandum of law in support thereof. On March 4, 1977, plaintiffs filed an amended complaint, and a memorandum of law in opposition to the preliminary objections. Thereafter, on March 17, 1977, defendant filed supplemental preliminary objections to plaintiffs' amended complaint and a

memorandum of law in support of the supplemental preliminary objections. On March 22, 1977, plaintiffs filed a memorandum of law in opposition to defendant's supplemental preliminary objections.

Defendant first preliminarily objects to Counts I and II of the complaint on the ground that plaintiffs do not state a claim upon which relief can be granted under Pennsylvania law because Pennsylvania does not recognize a cause of action for wrongful death or a survival action in the case of a stillborn fetus. Defendant cites decisions of the Pennsylvania Supreme Court in Carroll v. Skloff, 415 Pa. 47 (1964), and Marko v. Philadelphia Transportation Co., 420 Pa. 124 (1966), in support of its position.

Plaintiffs acknowledge the two above-cited cases, but argue that such cases are more than a decade old and the national trend in this area of the law has shifted tremendously since they were handed down.

Both plaintiffs and defendant are correct in their respective assertions. This question was first considered in Dietrich v. Northampton, 138 Mass. 14 (1884), where Holmes, J. denied recovery on the basis that there was no precedent for it and that the child was a part of its mother, who could thus recover for any damages to it that was not too remote to be recovered for at all. The issue was not addressed directly again until Verkennes v. Corniea, 229 Minn. 365, 38 N.W. 2d 838 (1949), where the court held that the administrator had a cause of action on behalf of the estate of an unborn infant, which died just before the birth from injuries inflicted upon it, when viable, as a result of another's

negligence. A substantial number of courts have subsequently passed on the question and have held that an action for the wrongful death of an unborn child is maintainable where the fetus was viable at the time of injury.

Reasons advanced in recent cases for allowing the cause of action include the following: a viable fetus is a living human being and thus a "person" within the statute; "life" is destroyed when a viable fetus is injured so that it cannot be born alive, for when viable, the child was capable of independent existence; it is illogical to allow liability to depend upon whether death from fatal injuries occurs just before or just after birth; it is absurd and unjust to allow recovery for prenatal injuries unless they are so severe as to cause death; and if the action were not allowed, the tortfeasor would be enabled to foreclose his own liability. See 15 A.L.R. 3d 942 for a discussion of cases holding for and against the allowance of a right of action on behalf of a stillborn fetus.

Plaintiffs argue correctly that had the child of plaintiffs Gilbert been born alive and lived for only a matter of minutes, there would be no question as to the right of action on its behalf. Because the injuries sustained by the fetus were more serious, resulting in its death prior to birth, it is argued by plaintiffs that it is inconsistent and most inequitable to treat the tortfeasor more lightly. In effect, plaintiffs argue, the position of defendant is one that rewards a negligent defendant for the more serious injury.

Although the national trend has been to allow a cause of action on behalf of a stillborn fetus that was injured when it was viable, a position in which

we find substantial merit, these preliminary objections must be decided on the basis of the existing common and statutory law of the Commonwealth of Pennsylvania: 40 P.S. §1301.307 and §1301.506. As such, we are constrained to dismiss Counts I and II of plaintiffs' complaint.

Defendant next preliminarily objects to plaintiffs' amended Count III wherein they claim on their own behalf damages for severe emotional shock and mental anguish as a result of the death of their child and damages for being deprived of the joys and pleasures involved in having and raising a child. Despite plaintiffs' allegation that such emotional shock and mental anguish was caused by the wanton and reckless conduct of defendant, defendant objects that Count III does not state a cause of action for which relief may be granted.

Defendant in its original memorandum of law in support of its original preliminary objections more than adequately states the law of the Commonwealth of Pennsylvania in support of its preliminary objections to Count III. Subsequent to the filing of same, plaintiffs amended their complaint to add the allegation that the alleged emotional shock and mental anguish was caused by the "wanton and reckless" conduct of defendant. The question to be answered herein is whether such amendment cures the defect in Count III of the original complaint.

To recover under Pennsylvania law for emotional distress resulting from another's injury or death, a plaintiff must allege and prove that (1) the emotional distress was the result of defendant's wanton or intentional misconduct, or (2) physical impact occurred between plaintiff and defendant to which plaintiff did not consent, or (3) plaintiff was in personal danger of physical impact and feared such

impact and had a negligent force directed against her: Kahle v. Glosser Bros., Inc., 462 F. 2d 815 (3d Cir. 1972).

Until the Pennsyvalnia Supreme Court's decision in Niederman v. Brodsky, 436 Pa. 401 (1970), the "impact rule" was well established, and recovery was denied for any injury resulting from fright or other emotional suffering unaccompanied by an actual physical impact. The "impact rule" was overruled in Niederman, supra. However, the Supreme Court carefully stated the limits of the reform: "We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." 436 Pa. at 413.

The facts of the instant action do not meet the requirements of the Neiderman tests. Plaintiffs were not in personal danger of physical impact and did not fear a physical impact. Wife-plaintiff voluntarily entered the hospital for treatment and care which would be impossible to render without physical contact between her and the doctors or the alleged agents of defendant. When a plaintiff willingly permits physical contact, she cannot recover for the emotional distress allegedly resulting therefrom.

Subsequent Pennsylvania cases cited by defendant in which parents or relatives have sought damages for emotional distress under circumstances similar to those in the instant case have denied such recovery: Conway v. Spitz, 407 F. Supp. 536 (E.D. Pa. 1975); Beck v. Brennan, 64 D. & C. 2d 339 (C.P. Mont. Co. 1972), aff'd per curiam, 228 Pa.

Superior Ct. 804 (1974); Medleycott v. Harris, 64 D. & C. 2d 780 (C.P. Bucks Co. 1973); Formichella v. Wagner, 51 D. & C 2d 119 (C.P. Mercer Co. 1970).

Defendants also argue that plaintiffs cannot rely on Papieves v. Kelly, 437 Pa. 373 (1970), to support their position that alleged "wanton" acts of malpractice permit them to recover for any resulting emotional and mental distress. In Papieves, supra, the court limited its holding to the facts of that case. The only basis for recovery for mental and emotional distress in Papieves, supra, was the wrongful mistreatment and intentional withholding of a dead body. The court never purported to hand down a general rule. Our research has not revealed and plaintiffs have not noted any other Pennsylvania appellate cases permitting recovery as sought herein for merely "wanton" acts. The holding in Papieves, supra, was limited by the court to the facts of that case only.

Plaintiffs' Count III also seeks damages "for being deprived of the joys and pleasures of having and raising of a child." Defendant cited the following cases to support his argument that the Pennsylvania appellate courts have repeatedly held that these are not compensable items of damages in wrongful death and survival actions such as this: Willinger v. Mercy Catholic Medical Center, 241 Pa. Superior Ct. 456 (1976) ("loss of life's pleasures or amenities is simply not one of the elements of recovery in wrongful death and survival actions."); Papieves v. Kelly, supra ("no recovery has been allowed in wrongful death actions for grief and mental suffering resulting from the loss of a decedent"); Ferne v. Chadderton, 363 Pa. 191 (1949), ("under the Death Statutes the administratrix was entitled to recover . . . [no] allowance for mental

suffering, grief, or loss of companionship"); Gaydos v. Domabyl, 301 Pa. 523 (1930), ("damages in death cases do not include a claim for mental suffering, grief, or distress of mind [citing cases], nor for the loss of society or companionship, as such, of children or parents [citing case]").

Therefore we find that plaintiffs fail to state a claim upon which relief can be granted in Count III of their complaint.

In Count IV of plaintiffs' complaint, plaintiffs seek recovery for emotional and mental anguish due to the hospital's handling of the fetus' burial. Defendant argued that the Pennsylvania courts have not recognized such a cause of action. Moreover, defendant cited Papieves v. Kelly, supra, as the closest case and stated that Papieves is distinguishable from the instant case in two ways. First, Papieves permitted only recovery for distress resulting from "intentional and wanton acts of mishandling a decedent's body." Here plaintiff's alleged only "negligence" in this regard (complaint paragraph 13). Second, Papieves concerned only the burial of a person who was at one time alive; not a fetus. In fact, defendant argued, the authorities cited in Papieves are directed only to mistreatment and withholding of dead bodies of previously living persons. It is clear that the Pennsylvania Supreme Court in Papieves intended that recovery be allowed only in instances concerning burials of individuals who were once alive. Moreover, the court limits its holding to the distress caused by mishandling of a decedent's body as was alleged in Papieves. "We conclude that recovery may be had for serious mental or emotional distress directly caused by the intentional and wanton acts of mishandling a decedent's body which are here alleged." 437 Pa. at 379.

Upon closer reading of Papieves we note that Papieves concerned the withholding of a corpse as constituting unjust interference with the right to possession of the body. Papieves held that an action would lie against a defendant who intentionally withholds a body from those relatives entitled to it. The withholding constitutes an actionable wrong. In the instant case, plaintiffs agreed to defendant's offer to arrange for the burial of the fetus. Therefore, plaintiffs cannot argue that their right to possession of the fetus was violated. There was no withholding of the corpse in the instant case.

The Supreme Court's decision in Papieves, supra, concerned also the intentional act of burying a decedent's body without authorization or consent of plaintiffs with the intent to prevent them from discovering the fate of their son. Here, defendant did not conceal the fetus at any time and did not bury the fetus without authorization or consent of plaintiffs.

We therefore find that plaintiffs' Count IV of their complaint does not state a cause of action for which recovery may be granted.

With regard to defendant's objection to plaintiffs' Count V of their amended complaint, we find that defendant's position is not well taken. Pennsylvania courts declaring that there is no independent right of action for a stillborn fetus who did not live outside the mother's womb as an independent life in being, implicitly find that such a fetus must then be considered a part of its mother's body. If damage were done to the fetus while it was a part of her body, it is damage to her body and she would be entitled to compensation for such harm. We therefore dismiss defendant's preliminary objection to Count V of plaintiffs' complaint.

## ORDER

And now, May 25, 1977, upon consideration of defendant Northeastern Hospital of Philadelphia's preliminary objections, supplemental preliminary objections, and memoranda of law in support thereof, as well as plaintiffs' memorandum of law and supplemental memorandum of law in opposition to defendant Northeastern Hospital of Philadelphia'a preliminary objections and supplemental preliminary objections, it is hereby ordered and decreed that defendant's supplemental preliminary objections to Counts I, II, III, and IV of plaintiffs' amended complaint are sustained and such Counts of plaintiffs' amended complaint are dismissed and defendant's supplemental preliminary objection to plaintiffs' Count V of their amended complaint is dismissed.