557 A.2d 1068

Robert HAVERSTOCK, a Minor, BY his Parents and Natural Guardians, Charles HAVERSTOCK and Beverly Haverstock, and Charles and Beverly Haverstock, in Their Own Right

v.

T.I. RALEIGH (USA), Richard Goglia, t/a Oxford Valley Bicycle Company, T.I. Raleigh, Ltd. and The Huffy Corporation,

Appeal of T.I. RALEIGH (USA), T.I. Raleigh, Ltd. and the Huffy Corporation.

Robert HAVERSTOCK, a Minor, by his Parents and Natural Guardians Charles HAVERSTOCK and Beverly Haverstock, and Charles and Beverly Haverstock, in Their Own Right

v.

T.I. RALEIGH (USA), Richard Goglia, t/a Oxford Valley Bicycle Company, T.I. Raleigh, Ltd. and The Huffy Corporation.

Appeal of T.I. RALEIGH (USA), T.I. Raleigh, Ltd. and the Huffy Corporation.

Superior Court of Pennsylvania.

Argued Dec. 14, 1988.

Filed March 31, 1989.

Reargument Denied May 24, 1989.

Kevin Connors, Philadelphia, for appellants in Nos. 1816 and 2041.

Judy Greenwood, Philadelphia, for Haverstock, appellees in Nos. 1816 and 2041.

Joseph Glantz, Levittown, for Goglia, appellee in Nos. 1816 and 2041.

Before CAVANAUGH, McEWEN and POPOVICH, JJ.

CAVANAUGH, Judge:

The primary issue in this case is whether the court below erred in charging the jury under Restatement of Torts (Second) § 400 which provides:

## § 400. Selling as Own Product Chattel Made by Another

One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were the manufacturer.

Comment a. to this Section states:

**Comment:**

a. The words "one who puts out a chattel" include anyone who supplies it to others for their own use or for the use of third persons, either by sale or lease or by gift or loan.

The issue must be considered in light of the facts established by the evidence. In December, 1978 Charles Haverstock went to the Oxford Valley Bicycle Company, an authorized dealer for Raleigh bicycles, to purchase a bicycle for his son, Robert, as a Christmas present. Mr. Haverstock wanted to purchase a Raleigh bicycle because he knew of the company's reputation as a manufacturer of excellent bicycles and because it came with an extended warranty. When he was at the bicycle shop, Mr. Haverstock saw a Raleigh floor model that had a lifetime guarantee on the fork and frame. He wanted a black bicycle but there was not one on the floor. He also selected a different seat and handlebar from the floor model. Mr. Haverstock left a deposit and returned on Christmas Eve to pick up the bicycle which was assembled and ready for delivery.

The bicycle was given to Robert, who was then about fourteen years of age, on Christmas Day, 1978. He used the bicycle to get around the neighborhood and to go to the store on occasion. Robert decided that he would like the fenders removed and the bicycle was returned to Oxford Valley Bicycle Company in March, 1980 to have this accomplished. Robert also changed a flat tire on the bike. Beyond this, there were no changes or modifications made on the bike after Mr. Haverstock took delivery.

Robert used the bicycle without incident until February 19, 1981 when he was riding near his home. The bicycle suddenly collapsed causing him to fall and as a result of the accident, he suffered severe injuries.

Robert's parents, who are Charles and Beverly Haverstock, brought two actions as natural guardians of their son and in their own right. One action was against Raleigh Bicycle Company and Oxford Valley Bicycle Company, Inc. and was brought at March Term, 1982 at No. 8197, and alleged that the "bicycle involved in the accident was manufactured by defendant, Raleigh Bicycle Company and was sold, assembled and adjusted by defendant, Oxford Valley Bicycle Company, Inc." It was further charged that "defendant, Raleigh Bicycle Company, negligently and carelessly designed, manufactured and distributed the bicycle involved in the accident," and that Oxford Valley Bicycle Company negligently and carelessly assembled, adjusted and sold the bicycle. The second complaint was against T.I. Raleigh, Ltd. and The Huffy Corporation and filed at No. 3802, December Term, 1982, alleging that the defendants in that action were the successor corporations to those named in the earlier complaint. It alleged that the bicycle was "manufactured, designed and distributed" by defendants T.I. Raleigh, Ltd. and Raleigh Bicycle Company. Nowhere in the complaints is it alleged that the Raleigh Bicycle companies were vicariously liable for the acts of another.

The plaintiffs proceeded at trial on the basis of strict liability under Restatement (Second) of Torts § 402A, which provides:

**§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Section 402A sets forth the law in this Commonwealth, having been adopted in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). This was reaffirmed in *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974), wherein the Supreme Court noted that "[t]oday, as the Superior Court correctly recognized, a manufacturer by virtue of Section 402A is effectively the guarantor of his products' safety". Where the doctrine of strict liability applies, there is no need to prove negligence. *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975). *See also, Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984); *Staymates v. ITT Holub Industries*, 364 Pa.Super. 37, 527 A.2d 140 (1987).

The trial testimony on behalf of the plaintiffs indicated that the bicycle, which was manufactured by Raleigh, was not defective in any way but after it was delivered to Oxford Valley Bicycle Company a defective fork assembly was substituted by Oxford for the original part, and the substituted part, which was not manufactured by Raleigh, was defective. The expert witness for the plaintiffs concluded that the fork manufactured by Raleigh would have been very good but that the dealer, in order to accommodate the handlebar selected by Mr. Haverstock, substituted an improperly fitting fork which eventually gave way. Counsel for the appellees, the plaintiffs below, summarizes this as follows at page 9 of the appellees' brief:

In the present case, Raleigh entrusted final assembly of its bicycles to its authorized dealers. From the evidence, the jury reasonably inferred that the dealer substituted a non-Raleigh fork because he had no suitable Raleigh fork to accommodate the handlebar selected by Mr. Haverstock.

Prior to trial, counsel for the appellees sought to proceed not only on the basis of Section 402A of the Restatement (Second) of Torts, but to impose liability upon Raleigh, not as the manufacturer under § 402A, but vicariously under § 400 as one who supplies a chattel "manufactured by another". Counsel for the appellants objected to this as § 400 is based on a "theory of vicarious liability". *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 343, 237 A.2d 593, 599 (1968). Nowhere in the pleadings is there any indication that the plaintiffs sought to impose vicarious liability upon Raleigh as the result of someone else's activity, viz. Oxford Valley Bicycle Company. Rather, the plaintiffs alleged in both complaints that Raleigh was the manufacturer of the bicycle containing defects. In *Willinger v. Mercy Catholic Medical Center*, 241 Pa.Super. 456, 362 A.2d 280 (1976), affirmed *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 393 A.2d 1188 (1978), it was pointed out that vicarious liability and personal liability are separate causes of action.

There can be little dispute that vicarious liability as an employer and liability for personal negligence are separate causes of actions, and as such, would require significantly different trial preparation. Thus, had the court allowed the amendment at trial, the additional defendant would have been seriously prejudiced. We note further that the parties engaged in extensive discovery during which defendant had ample opportunity to amend its complaint once it realized that agency would be critical to its defense. 241 Pa.Super. at 466, 362 A.2d at 285.[1]

1. The Supreme Court affirmed on appeal, stating 482 Pa. 441, 444, 393 A.2d 1188, 1189, footnote 2:

Mercy Catholic Medical Center appeals from the trial court's denial of the hospital's request to amend its complaint against additional defendant Go. The hospital made its request after plaintiff's case had been presented at trial and more than three years after the statute of limitations had run. The hospital's original complaint against Dr. Go alleged individual negligence in the administration of anesthesia to Leonard Willinger. The attempted amendment would have alleged that Dr. Go was vicariously liable for the negligence of a nurse anesthetist. Such an amendment would have raised a new cause of action against Dr. Go.

■ It is immaterial that the plaintiffs proceeded on a theory of absolute liability under 402A rather than on negligence; they allege in their complaints that Raleigh was the manufacturer of the bicycle in question. They may not, after the statute of limitations has expired, as in this case, proceed on the basis that they sold or distributed a chattel "manufactured by another" under § 400.

Counsel for Raleigh objected to the interjection of § 400, before trial, as the time for amending the complaint had expired. At the pre-trial conference held on November 30, 1987, the day before trial commenced, the following colloquy took place with respect to the applicability of § 400:

MR. WEISS: [Counsel for Raleigh]

I'm speaking in terms of us being liable for the alleged negligent act or improper act.

THE COURT: ... I don't think anybody suggests that Oxford Valley was anything other than an independent business, do you?

MS. GREENWOOD: [Counsel for Plaintiffs]

No. A franchise dealer so to speak.

THE COURT: That's why you say it comes under this 400?

MS. GREENWOOD: Yes. It's not only just being an authorized dealer. This section just seems completely logical in that it's saying for negligence what 402A says, taking negligence out of it.

THE COURT: *It sounds like it's going to be an incredibly difficult case on which to charge the jury if this is your theory, but I will sound profound.*

.     .     .     .     .

MS. GREENWOOD: Just a few matters. To the extent that there is a claim being made that there is improper pleading we will probably tomorrow move to amend, correct any.

.     .     .     .     .

Since the statute of limitations expired more than three years earlier, the trial court properly denied the amendment.

THE COURT: They didn't say improper pleading. He just said that you did not plead agency.

MR. WEISS: I will take the position [and] the cases I cite indicate that you can't do it now.

THE COURT: You can't amend to add a new cause of action after the case gets to trial. I would be inclined to agree with that. (Emphasis added.)

The issue was again discussed on the day trial commenced.

MS. GREENWOOD: There was a motion that was filed with regard to the question of agency being pleaded and yesterday Your Honor had indicated that it was inclined to grant that motion.

THE COURT: I was inclined to say that raising a new cause of action—I haven't memorized your pleadings yet so that I'm not sure what the precise language of your pleadings is, but if a fair reading of your pleadings indicates that there is nothing in there now saying that you are trying this case or bringing this case on the agency theory, it's too late both for statute of limitations and pleadings problems.

Notwithstanding that the complaints were not amended to allege vicarious liability, the court charged on the basis of § 400 as follows:

Now, Raleigh, Limited is a manufacturer. Raleigh, USA is a seller. Oxford Valley Bicycle Company is a seller. Each of them has this obligation that I have discussed. A manufacturer, a seller, is responsible, if they sell a product that is defective at the time that it leaves their control.

The plaintiff is not required to prove that they're negligent or careless. You may find them liable even though they exercise care in the manufacture, assembly and distribution of the product.

This is not a negligence case. This a product liability case. If the product was defective at the time that Mr. Haverstock purchased it in December, 1979, [sic] then there is liability.

> *A corporation such as T.I. Raleigh, Limited, or T.I. Raleigh, USA, which puts out as its own product an item manufactured by some other company, is subject to the same liability as though the item was manufactured itself.*

> .    .    .    .    .

> The act of placing one's name on a product is a factor in assessing responsibility because it frequently causes a product to be used in reliance upon the seller's reputation. (Emphasis added.)

■ The portion of the charge that incorporated § 400 could do nothing but confuse the jury. The only thing sold to Mr. Haverstock was a Raleigh bicycle which was indisputably manufactured by Raleigh. The plaintiff did not purchase a conglomeration of nuts and bolts, tires, bicycle chain, gears, fenders, handlebars, and steering fork; he purchased a bicycle made by Raleigh. If the bicycle in question were manufactured by one other than Raleigh and Raleigh represented that it was manufactured by it, then § 400 might be applicable to impose vicarious liability on the company.

A review of the Pennsylvania cases involving § 400 substantiates that it is not applicable to the factual situation before us. In *Forry v. Gulf Oil Corporation, supra,* a tire was manufactured by B.F. Goodrich Co. and distributed to Gulf Tire and Supply Co. which had its name embossed on the tire casing. The court stated at 428 Pa. at 343, 344, 237 A.2d at 599:

> *If Goodrich would be liable, then Gulf Tire would also be liable under the theory of vicarious liability set forth in Section 400, Restatement 2d, Torts ...* The reasons for the extension of liability in such situation are sound: (a) the name and the trademark of the sponsor, plus the reputation of the sponsor, constitute "an assurance to the user of the quality of the product" (Comment d, Section 400) and (b) "reliance [by the user] upon a belief that [the sponsor] has required [the product] to be made properly for him" (Comment d, Section 400). We

adopt Section 400 of the Restatement as part of the tort law of this Commonwealth. *In the instant factual situation, Gulf Tire had had its name embossed upon the casing of this tire and clearly put out as its own product this tire within the language of Section 400.* In addition to contending that Section 400 should not be adopted by this Court, Gulf Tire argues that Section 400 is presently inapposite because Forry placed no reliance on the name of Gulf Tire on the tire nor was he mislead thereby. Such argument goes to a matter of defense the validity of which would depend upon the resolution of the facts produced in support thereof by Gulf Tire. *Under the instant circumstances, if the defect in the tire caused the explosion of the tire, then, under the provisions of Section 400, Gulf Tire would be vicariously liable.* (Emphasis added.)

Although Section 400 was adopted as the law of Pennsylvania by the Supreme Court in *Forry v. Gulf Oil Corporation* in 1968, it was not referred to again in a reported decision by an appellate court of this Commonwealth until 1983. In *Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983), an electric power mower was sold by Sears, Roebuck under its brand name of "Craftsman". Sears was not the manufacturer of the mower but was held liable for a defective design in it resulting in personal injuries, as well as General Electric Corporation, the supplier of the mower's electrical system.[2] The court stated at 320 Pa.Super. at 460, 467 A.2d at 624:

> ... the act of placing one's name on a product is a factor in assessing responsibility because it frequently causes a product to be used in reliance upon the seller's reputation, Restatement (Second) of Torts § 400.

In *Burch,* there was a firm basis for imposing vicarious liability on Sears, Roebuck, as it placed its brand name on an electric mower although it did not manufacture it. In

---

**2.** We held that taking all facts and reasonable inferences in favor of the verdict winners, the jury could have concluded that General Electric was primarily liable for the creation of the danger, and that Sears was only secondarily liable.

the case before us, Raleigh placed its name on a bicycle that it did manufacture and there was no basis for interjecting § 400 into the case, even if there had been a timely motion to amend the complaint.

*Brandimarti v. Caterpillar Tractor Company*, 364 Pa. Super. 26, 527 A.2d 134 (1987), appeal denied *Brandimarti v. Caterpillar Tractor Company*, 517 Pa. 629, 539 A.2d 810 (1988), illustrates the proper application of § 400 of the Restatement to a situation where the non-manufacturer is held responsible for authorizing its name to be placed on a product which it did not manufacture. In *Brandimarti*, a forklift which was manufactured by Towmotor, Inc. was defective, resulting in its overturning and injuring the plaintiff. Caterpillar Tractor Company was the parent company of Towmotor. The court below directed a verdict in favor of Caterpillar Tractor and we remanded. Although Caterpillar did *not* manufacture or sell the forklift, the Caterpillar trade name was conspicuously displayed on the forklift. In the case before us, Raleigh was the manufacturer of the bicycle in question; it did not sell or distribute a bicycle manufactured by another company so as to fall within the scope of § 400 as interpreted in *Brandimarti, supra.*

*Carter v. Joseph Bancroft & Sons, Co.*, 360 F.Supp. 1103 (E.D.Pa.1973) imposed liability on the licensor of a dress which it did not make. However, the defendant permitted the dress to be identified by its trademark, Ban–Lon. The dress caught fire at a dinner party when crepe suzettes were being served, resulting in serious injury to the plaintiff. The United States District Court held that *Forry v. Gulf Oil Corporation, supra,* was indistinguishable from the case before it and the defendant was liable under § 400 of the Restatement of Torts.[3]

The primary duty of a trial judge in charging the jury is to clarify the issues so that the jury may understand the

---

3. The court noted in *Carter v. Joseph Bancroft & Sons Company, supra,* that since § 400 has been adopted under Pennsylvania law, one who supplies as his own product, a chattel manufactured by another, is subject to the same liability as though he were its manufacturer.

issues that they are to decide. *Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601 (1985); *Brandimarti v. Caterpillar Tractor Company, supra.* The court below was cognizant that it would be very difficult to charge the jury on the issues involved in § 400. We are of the opinion that the evidence did not support a charge raising the issue of vicarious liability. The jury could not help but wonder why the court instructed it on the liability of one who does not manufacture a product when it is undisputed that Raleigh manufactured the bicycle in question. In reviewing an allegedly incorrect jury charge an appellate court must read the charge as a whole, and this is particularly important where the trial judge mentions in his charge a rule of law that appears not to be directly applicable to the case before it. *White v. Southeastern Pennsylvania Transportation Authority,* 359 Pa.Super. 123, 518 A.2d 810 (1986). Considering the charge as a whole, and the complexities involved in cases involving absolute liability, we may not conclude that Raleigh was not prejudiced by the charge. Similarly, a new trial is required as to Oxford Valley Bicycle Company whose fortunes at trial were inextricably tied to those of the manufacturer of the bicycle.

Orders reversed and case remanded for a new trial.