## Young, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Collision—Private driveway—Vehicle struck coming from driveway—Contributory negligence—Duty of person controlling source of danger—Reliance on use of due care—Case for jury.*

1. Although no one has a right carelessly to put himself in a position of danger, relying entirely on the assumption that another who controls the sources of such danger will see to his protection, yet, the law recognizes the abstract right of everyone who takes due care according to the circumstances in which he is placed to act upon the principle that others will do likewise; the extent of the application of this principle, depends upon the facts in each case, and the question whether due care under the surrounding conditions and circumstances has or has not been taken, except in cases where all the material facts and reasonable inferences to be drawn therefrom clearly demonstrate contributory negligence, is always an issue for the jury to determine.

2. In an action against a street railway company to recover damages for personal injuries sustained in a collision where there was evidence that plaintiff, after harnessing his horse in a stable eight feet from defendant's tracks, went to the highway, looked in the direction from which the cars came and seeing the tracks were clear returned, got in the buggy and drove out; that less than a minute elapsed from the time plaintiff took his last look and when he left the stable, and that as he drove out a neighbor who was standing at the door told plaintiff that the track was clear, although his view and that of the plaintiff were partially obstructed by an electric pole, and that in driving across the tracks the buggy was struck by a car moving at a great speed and without warning, although lighted lamps were fastened to each side of the buggy and the motorman could have seen the horse at a distance of 500 feet from the stable, the question of plaintiff's contributory negligence in failing to see the car in time or in failing to lead his horse over the tracks before he got in the buggy

was for the jury and it was error for the court to enter a compulsory nonsuit.

Argued Jan. 14, 1915. Appeal, No. 258, Jan. T., 1915, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., March T., 1913, No. 2401, refusing to take off nonsuit, in case of Jacob Young v. Philadelphia Rapid Transit Company. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WILLSON, P. J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit, which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*G. Von Phul Jones,* for appellant.

*Harold B. Beitler,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 15, 1915:

On October 3, 1912, at about 7 o'clock in the evening, the plaintiff and his wife were injured while attempting to drive across the defendant's tracks; they brought an action in trespass to recover damages, alleging that the car which caused their injury had been negligently operated at a high rate of speed without any warning of its approach. A nonsuit was entered on the ground of contributory negligence, which the court below subsequently took off as to the wife, but refused to remove in the case of the husband, who has appealed.

When the evidence is viewed in the light most favorable to the plaintiff, as it must be where the error assigned is the refusal to take off a nonsuit, the following state of facts could be found: In 1898 the plaintiff built

a stable which opened on Old York Road, Philadelphia; the defendant's trolley line ran along that side of the road upon which the stable was located; the first rail of the track was within about eight feet of the entrance door to the stable; on the day of the accident, the plaintiff and his wife were going for a buggy ride; the plaintiff harnessed his horse and, after his wife had taken her place in the vehicle, he went out on the highway and looked in the direction from which the cars came; he waited for an approaching car to pass, looked again, and saw that the tracks were clear; he then requested Mr. Snyder, a friend who lived in an adjoining house, to shut the door after they had left the stable and to keep a lookout for cars, after which he walked back, got into the buggy and drove out; there was an interval of less than a minute from the time the plaintiff took his last look and saw the tracks clear until he left the stable; although the plaintiff listened for a signal before he started his horse, none was given by the approaching car. After the plaintiff took his place in the buggy, Mr. Snyder, who stood close to the building and had his "left hand up to the door ready to close it" as soon as the buggy should clear the stable, looked for a car and, not seeing any, called, "It is all right, come ahead"; the plaintiff immediately drove out and, just as his horse got on the track, he saw a car quite near him; he tried to clear the track, but before he could do so his buggy was struck at the rear end and knocked about 35 or 40 feet; the car ran about 100 feet "at a tremendous speed" before it stopped; on coming out of the stable the horse reached the track before the driver cleared the door, and then the plaintiff's view was obstructed to some degree by a trolley or electric pole which stood in the space between the building line and the tracks, and possibly by other poles; from where Mr. Snyder stood, his view was likewise obstructed; furthermore, as soon as the horse appeared it and the buggy came between Mr. Snyder and the approaching car; the grade of the road traversed by the trolley was down hill for about 500 feet

toward the plaintiff's stable, and, with a clear view, the approach of a car might have been seen about this distance away; the lights on the street were such that any one looking could have observed the plaintiff as he made his exit from the stable, and lighted lamps were fastened to each side of the buggy.

Although no one has a right carelessly to put himself in a position of danger relying entirely on the assumption that another who controls the sources of such danger will see to his protection, yet, the law recognizes the abstract right of every one who takes due care according to the circumstances in which he is placed to act upon the principle that others will do likewise; the extent of the application of this principle depends upon the facts in each case, and the question whether due care under the surrounding conditions and circumstances has or has not been taken, except in cases where all the material facts and the reasonable inferences to be drawn therefrom clearly demonstrate contributory negligence, is always an issue for the jury to determine.

On the facts as we have stated them, and as they might have been found by the jury, it cannot be said as a matter of law that the plaintiff acted unduly upon the assumption that the defendant would take care not to injure him, or that he placed his fate in the hands of Mr. Snyder, depending exclusively on the latter's care; no more can it be said as a matter of law that Mr. Snyder was careless in not observing the approaching car and notifying his neighbor in time to enable him to avoid the accident; or that the plaintiff himself was guilty of contributory negligence because he did not see the car in time, or because he drove out of the stable instead of leading his horse over the tracks and then getting into the buggy; all these alleged acts of contributory negligence were issues of fact, as also was the question of the defendant's negligence, and the learned trial court erred in not submitting them to the jury under proper instructions.

VOL. CCXLVIII—12

None of the authorities cited by either side rules this case; but King v. Pittsburgh, Etc., Ry. Co., 242 Pa. 497, is nearest on its facts. There the plaintiff was injured when coming out of a private driveway which led from his farm buildings to a public road occupied by the tracks of the defendant railway company; at a point where he could see about 100 feet along the track, he "stopped, looked and listened"; his son, who was keeping an outlook on the other side of the track at a place from which he could see about 600 feet, "not seeing or hearing a car," signalled the plaintiff to come on; the latter looked again, and then obeyed the signal; his wagon was struck as it passed over the second rail; "according to the plaintiff's testimony the car was running very rapidly and no notice of its approach was given." It was held that the duty of care did not rest entirely upon the plaintiff, but that all parties were bound to exercise care "commensurate with the danger of the particular situation"; this is the rule which governs the case at bar. Here, the location of the trolley tracks within eight feet of the building line of the plaintiff's property, and within the same distance of other stables and shops adjacent thereto, could not deprive the plaintiff of the ordinary use of his property; but all concerned had to act with the care required by the conditions thus created. In other words, the circumstances required care on the part of those operating the cars commensurate with the dangers of the situation, and it also called for like care on the part of the plaintiff. When we consider all the surrounding conditions, obstructions to the view, etc., together with the conduct of the several parties present at the time of the accident, it becomes apparent that the question of the degree of care called for, and whether it had been exercised by those concerned, could not be measured as matters of law; both were issues for the jury to pass upon.

The assignment of error is sustained, and the judgment is reversed with a procedendo.