## Schmidt v. Philadelphia Rapid Transit Company, Appellant.

*Negligence — Street railways — Collision — Car — Car turning corner—Overhang—Speed ordinance — Contributory negligence — Case for jury.*

1. The driver of a vehicle has the right to rely on the custom of street cars to stop, or at least the duty to reduce the speed, at a corner at the safety stop limit fixed by city ordinance. Even in the absence of such custom, or requirement, it is the duty of the operator of street cars to exercise proper care, depending upon the condition of the street and traffic at any particular point, and especially at crossings.

2. In an action against a street railway company to recover damages for personal injuries sustained by the driver of a cart in a collision with one of defendant's cars, the questions of defendant's negligence and of the plaintiff's contributory negligence are for the jury and a verdict and judgment for the plaintiff will be sustained where it appears that the plaintiff and the street car approached the crossing in opposite directions on the same street, the plaintiff arrived first at the crossing and defendant's car, which was being run at a rate of from 25 to 30 miles an hour, turned into an intersecting street, without reducing its speed, struck the plaintiff's cart which was near the curb on the right side of the street, with the overhang of the rear of the car and threw plaintiff from his cart, causing the injuries complained of.

3. In such case, although plaintiff was not justified in making close calculations of chances, he was not bound to stop and wait until the car which was in sight at a distance had passed.

Argued March 22, 1916. Appeal, No. 63, Jan. T., 1916, by defendant, from judgment of C. P. No. 2, Philadelphia Co. March T., 1914, No. 4608, on verdict for plaintiff, in case of William Schmidt v. Philadelphia Rapid

Transit Company.    Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.    Affirmed.

Trespass to recover damages for personal injuries. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict for the plaintiff for $2,000.00 and judgment thereon.    Defendant appealed.

*Errors assigned,* among others, were various rulings of the trial judge.

*Bernard J. O'Connell,* for appellant.—The proximate cause of the accident was misconceived by the trial judge: McIntyre v. City of Pittsburgh, 238 Pa. 524; Fane v. Philadelphia Rapid Transit Co., 228 Pa. 471; Black, et al., v. Philadelphia Rapid Transit Co., 239 Pa. 463.

The accident was due to the mutual miscalculation of the parties: Patton v. Philadelphia Traction Co., 132 Pa. 76; Hause v. Lehigh Valley Transit Co., 38 Pa. Superior Ct. 614; Osterheldt v. Peoples, 208 Pa. 310; Hoffman v. Philadelphia Rapid Transit Co., 214 Pa. 87.

*Morris V. Daniels,* for appellee.—There was ample evidence of negligence of the defendant and disputed questions of fact which required the submission of the case to the jury: Danko v. Pittsburgh Rys. Co., 230 Pa. 295; Wechsler v. Pittsburgh Rys. Co., 247 Pa. 96.

OPINION BY MR. JUSTICE FRAZER, May 1, 1916:

Plaintiff sued for injuries sustained by a collision at the corner of Coral and York streets, Philadelphia, with a car belonging to, and operated by, defendant. Defendant's cars at this point run north on Coral street, and turn eastward on York street. Another line runs south on Coral street, and turns westward on York street, there being no connection between the two lines in York street.

Plaintiff testified that at the time of the accident he was on the east side of Coral street, driving north in a two-wheel cart loaded with meat, and upon reaching the south side of York street he saw a car coming south-wardly on Coral street "about a square away"; that he proceeded to cross York street, and, upon reaching the building line on the north side of that street, the car was twenty-five or thirty yards distant. The speed of the car was from twenty-five to thirty miles an hour, and plaintiff was driving within a foot of the east curb, and as close to the sidewalk as his cart could be driven, in view of the fact that the meat and the mudguards pro-truded over the sides somewhat, and came close to the awning poles located along the curb line of the pavement. When the car reached York street it continued around the curve without stopping, and in doing so the overhang on its rear end struck the hub of plaintiff's cart, throw-ing him out, and inflicting the injuries for which he now claims damages. The total length of the car is thirty-eight feet seven inches, and, excluding bumpers, its body is twenty-eight feet in length. The distance from the curb to the nearest rail on the side of the street upon which plaintiff was driving is slightly less than ten and one-half feet. The overhang of the car extends approxi-mately one foot beyond the rail. In turning a corner, however, the rear end swings slightly more than four feet beyond the rail, making the minimum distance be-tween the curb and the overhang six and one-half feet. The width between the wheels of plaintiff's cart was five feet, and including the mudguards the total width was six feet. The trial judge left to the jury the question of defendant's negligence and plaintiff's contributory negli-gence, and there was a verdict for plaintiff followed by motions for defendant for judgment non obstante vere-dicto, and a new trial, both of which were refused.

Defendant contends it was entitled to binding instruc-tions in its favor, as plaintiff was familiar with the lo-cation and conditions generally, including the route of

the cars, saw the car approaching, and was aware it would turn into York street at that point, but, notwithstanding this information, he took the chance of passing without being struck by the overhang caused by the curve. Plaintiff testified that on previous occasions cars invariably stopped before turning the corner, and offered in evidence an ordinance of the City of Philadelphia requiring a "safety stop" at the near side of the street, which, by the provisions of the ordinance, means that the speed of the car must be reduced to a degree not exceeding five miles an hour. He further testified his horse was walking at the time of the accident, and while this is denied by the motorman this contradiction in the testimony raised a question for the jury. Plaintiff's statement that the car was running from twenty-five to thirty miles an hour was corroborated to some extent by a witness who testified plaintiff's cart traveled not more than eighteen or twenty feet while the car traveled a distance of three hundred feet. This witness also testified that when plaintiff was at the south side of York street the car was more than a square away, and when plaintiff reached the north side of that street the car was "pretty well up the street." According to plaintiff's evidence it is apparent he had reached the north side of York street, the place of the accident, before the arrival at that point of the car, and had the motorman slackened speed, or exercised proper care by bringing his car to a stop until plaintiff's cart was safely beyond the curve, the accident would not have happened. Plaintiff having reached the narrow space between the rail and curb before the car reached that point, he had the right to assume the motorman would use the care necessary to avoid an accident as he approached the corner. "Although no one has a right carelessly to put himself in a position of danger relying entirely upon the assumption that another who controls the sources of such danger will see to his protection, yet the law recognizes the abstract right of everyone who takes due care according to the circumstances in which

he is placed to act upon the principle that others will do likewise": Young v. Philadelphia Rapid Transit Co., 248 Pa. 174, 177. While plaintiff was not relieved from exercising reasonable care on his part, he had the right to rely on the custom of the cars to stop, or at least the duty to reduce the speed, at the corner in question, to the safety stop limit fixed in the ordinance of the city. Even in the absence of such custom, or requirement, it is the duty of the operators of street cars to exercise proper care, depending upon the condition of the street and of traffic at any particular point, especially at crossings. The motorman saw plaintiff's position, and must have known the probability of his being struck by the overhang of the car; this situation, consequently, imposed upon the motorman the duty to use reasonable care to avoid injuring him. Although plaintiff was not justified in making close calculations of chances, he was not bound to stop and wait until the car, which was in sight at a distance, had passed: Callahan v. Philadelphia Traction Co., 184 Pa. 425. The questions of the motorman's negligence, and also of the contributory negligence of plaintiff, were clearly for the jury.

Complaint is made by defendant that the trial judge misconceived the facts concerning the extent of the overhang of the car in passing around the curve, it being contended that his instructions were based on the theory that it was impossible for the car and cart to pass each other at this point, and the accident was due to the excessive speed at which the car was traveling and rounding the curve. While it appears, from the part of the charge complained of, that the trial judge failed to take into consideration the fact that, in the moving of the car along the curve into York street, the extent of the overhang in Coral street, in the direction of the curb, would be less than at the corner of the two streets where the maximum overhang was reached, he, however, cautioned the jury that they were to make their own calculations and draw their inferences from the evidence, regardless

of the figures used by him; they were, therefore, left free to form their conclusions from the facts in the case. The charge was substantially correct, consequently there is no merit in either of the assignments of error.

The judgment is affirmed.