380 A.2d 848

Charles LEBESCO,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 19, 1977.

Decided Dec. 2, 1977.

416

Louis H. Van Dusen and John Rogers Carroll, Philadelphia, for appellant.

Donald E. Matusow, Philadelphia, for appellee.

Before WATKINS, President Judge, and HOFFMAN, CERCONE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in (1) allowing appellee's expert witness to present opinion evidence in response to a hypothetical question, (2) charging the jury regarding the zone of recognizable danger of a trackless trolley, (3) charging the jury that appellant would be required to compensate appellee for any additional harm caused by a venogram, and (4) instructing the jury that loss of life's pleasures was a separate, compensable element of damages. We affirm the lower court's order dismissing appellant's post-verdict motions.

On November 6, 1969, appellee filed a complaint in trespass in which he alleged that appellant's negligent operation of its trackless trolley caused appellee's injuries. At a jury trial which began on April 20, 1976, appellee presented the following testimony. On September 15, 1969, appellee took his son to a barber shop on the south side of Wyoming Avenue, slightly west of its intersection with "D" Street, in Philadelphia, Pennsylvania.[1] This intersection was a stop on the trackless trolley route that appellant operated on Wyoming Avenue. Appellee parked his automobile in an easterly direction in front of the barber shop entrance, slightly west of the trolley stop. When he left the barber shop, appellee helped his son into the passenger side of the automobile. He then walked to the back of the vehicle where he waited for the traffic proceeding in his direction to stop and walked to the driver's side of the automobile, unlocked the door, and entered the automobile. While sitting in the vehicle, appellee rolled down his window, leaving the door open about two feet. Appellee's left leg was outside the vehicle and his left hand was on the door. Suddenly, a trackless trolley, proceeding toward the curb in an easterly direction, hit appellee's partially open front door. The force

1. The record does not provide more specific information about the proximity of appellee's automobile to either the barber shop or the intersection of Wyoming Avenue and "D" Street.

of the impact moved the entire passenger side of the auto-mobile onto the sidewalk, damaged that part of the vehicle, and crushed the left front door, and threw appellee out of the automobile into the street.

Shortly after the accident, appellee experienced bruises, swelling, discoloration, and severe pain in his right leg, which his physician diagnosed as thrombophlebitis of the deep and superficial veins of that leg. As a result of the accident, appellee has experienced permanent damage to his vascular system, including extensive blood clots, which requires appellee to keep his right foot elevated in order to avoid inflammation and ulceration and to take blood-thinning medication for the rest of his life. As a result of his condition, appellee cannot stand or sit for prolonged periods of time and can perform only sedentary part-time work.

At the time of the accident, appellee was a first class fitter/welder earning about $196.00 per week. Appellee's expert witness, an economist, testified that at the time of trial first class fitter/welders earned approximately $296.00 per week. However, appellee's inability to stand or sit for any length of time disables him from working as a fitter/welder as well as from all forms of full-time employment. Appellee was 42 at the time of trial and expert testimony established that future impairment of his earning capacity, reduced to present value, exceeds $250,000.00.

The jury returned a verdict of $360,000.00 against appellant. Appellant filed post-verdict motions seeking either a judgment n.o.v. or a new trial. On January 7, 1977, the lower court entered an order denying appellant's motions. This appeal followed.

 Appellant's first contention is that the trial court erred in overruling appellant's objection to the opinion evidence of appellee's expert engineer because his testimony was in response to a hypothetical question not predicated upon facts in the record. The question of the admissibility of expert testimony is within the discretion of the trial judge. Our courts recognize that expert testimony is appro-

priate when the subject matter of that testimony is beyond the knowledge and experience of the ordinary juror. *Reardon v. Meehan,* 424 Pa. 460, 227 A.2d 667 (1967); *Steele v. Shepperd,* 411 Pa. 481, 192 A.2d 397 (1963); *Maholland v. Bird,* 230 Pa.Super. 431, 326 A.2d 528 (1974). Moreover, while the expert must base his testimony on evidence that is part of the record, he may base his answer on assumed facts which later become part of the record. *B & O RR Co. v. Langenfelder & Son, Inc.,* 222 Pa.Super. 138, 292 A.2d 415 (1972).

In support of his theory of liability, appellee presented an engineer as an expert witness. The engineer first testified that the nature and extent of the damage to appellee's automobile, as well as its landing on impact, demonstrated that the front door was not open more than two feet. This corroborated appellee's own testimony. Secondly, the engineer testified about the scientific concept of "off-tracking" which occurs when a vehicle turns. In off-tracking, the vehicle's rear wheels do not follow the path of the front wheels but proceed through the turn on a smaller arc than the front wheels. The effect of off-tracking increases with larger vehicles, such as trolleys, and accounts for the ability of the back of a vehicle to hit an object although the front of the vehicle avoids any impact. The engineer testified that the off-tracking phenomenon explained how the trolley hit the open door of appellee's automobile although the front of the trolley was untouched.

The engineer testified that he used the scientific principles of statics, dynamics, and standard analysis to formulate his opinion about how far the automobile door was open. Further, he demonstrated that technical principles of mechanics are the basis of the concept of off-tracking. Consequently, the scientific explanations offered in support of appellee's theory of liability are clearly beyond the knowledge of the ordinary lay person and, as such, are properly the subject of expert opinion.

Additionally, the engineer's testimony regarding off-tracking corroborated the testimony of both appellee and

one of appellant's own witnesses, a passenger on the trolley. Both witnesses testified that impact occurred as the trolley turned toward the curb. Appellant maintains that the direct evidence of its own witness did not become part of the record until after appellee's expert testified and appellee rested. Thus, appellant contends that there was nothing in the record to support the engineer's testimony that the trolley was turning the corner toward the curb to make a stop at "D" Street at the time of the accident. However, an expert may predicate an answer on assumed facts later introduced into evidence. *B & O RR. Co. v. Langenfelder & Son, Inc.,* supra. Accordingly, the lower court correctly permitted appellee's expert to explain off-tracking in order to aid the jury in determining whether the concept was involved in the accident.

Appellant's second contention is that the trial court improperly instructed the jury that the zone of recognizable danger of a trackless trolley includes the rear of the vehicle as it proceeds toward the sidewalk. The trial judge instructed the jury as follows: ". . . with respect to the operator of a SEPTA vehicle, the operator must operate his vehicle in such a manner that he does not endanger objects or persons within his zone of recognizable danger. And this zone includes the area of the rear of the trolley car or vehicle, as the vehicle makes its way to the sidewalk to pick up or discharge passengers.

"The driver of a vehicle on a city street must operate his vehicle with reasonable care and take precautions so that his vehicle does not pass so close to parked cars that it sideswipes a parked vehicle.

"If you find from the evidence in this case that the accident occurred when the trackless trolley was moving towards the curb in front of Mr. Lebesco's car, and if you find that the trackless trolley operator knew or should have known that the Lebesco vehicle was within the zone of his apprehensible danger, from the rear portion of that vehicle, then you would be able to find that the driver should have

been obligated to exercise a reasonable degree of care in order to avoid the anticipated danger."

In Pennsylvania, the operator of a vehicle has a duty to be aware of the characteristics of his vehicle and to exercise due care in avoiding dangers caused by those characteristics. *Restatement (Second) of Torts*, § 290 (1965). Consequently, the operator of a vehicle making a turn must be aware that the rear of his vehicle presents a danger to pedestrians. *Dorris v. Bridgman & Co.*, 296 Pa. 198, 145 A. 827 (1929); *Schmidt v. Philadelphia Rapid Transit Co.*, 253 Pa. 502, 98 A. 691 (1916); *Fritch v. Pittsburgh Railways Co.*, 239 Pa. 6, 86 A. 526 (1913). Accordingly, the trial court's charge to the jury accurately reflected Pennsylvania law.

Appellant's third contention is that the trial court improperly charged the jury that appellant could be responsible for harm to appellee resulting from medical treatment appellee received as a result of the accident. Shortly after the accident, appellee underwent a venogram, a diagnostic procedure in which dye is injected into the patient's veins to discover whether clots or other obstructions are present. Appellant's own medical expert testified that the venogram may have exacerbated appellee's condition. Accordingly, the trial court instructed the jury as follows:

". . . if you find that Mr. Lebesco was injured as a result of the negligence of the SEPTA driver, and if you find that he selected his physicians to care for him after that accident with ordinary care, then the defendant would be required to compensate him for an additional harm that may have been caused to him by their treatment. This is true even if you find that the physician made a mistake in ordering the venogram to be performed."

It is well established in Pennsylvania that a tortfeasor whose negligence is the legal cause of injury to a plaintiff is also liable for additional injury caused by the unskillful treatment that the plaintiff receives from a physician whom the plaintiff, exercising ordinary care, has selected. *Nathan v. McGinley*, 342 Pa. 12, 19 A.2d 917 (1941);

*Thompson v. Fox,* 326 Pa. 209, 192 A. 107 (1937); *Restatement (Second) of Torts* § 457 (1965). The trial judge's charge to the jury correctly reflected this legal principle.[2]

Appellant's final contention is that the trial court incorrectly instructed the jury that appellee was entitled to compensation for loss of life's pleasures, as a separate measure of damages, as a result of the permanent injuries he sustained. The court charged the jury, in part, as follows:

"[Appellee] is entitled to be fairly and adequately compensated for past, present and future loss of his ability to enjoy any of the pleasures of life as a result of his injuries."

Appellant maintains that *Willinger v. Mercy Catholic Medical Center,* 241 Pa.Super. 456, 362 A.2d 280 (1976) precludes the recovery of loss of life's pleasures as a compensable item of damages in a personal injury suit. However, *Willinger,* supra, only prohibits compensation for loss of life's pleasures in wrongful death actions. In *Willinger,* supra, our Court recognized that ". . . case law upholds the distinction between loss of life, in which case loss of life's amenities is not compensable, and impairment of a living person's faculties, in which instance such loss is recoverable." *Willinger,* supra, 241 Pa.Super. at 469, 362 A.2d at 286. In *Corcoran v. McNeal,* 400 Pa. 14, 161 A.2d 367 (1960), our Supreme Court stated that, "The object of a trespass action involving personal injuries, where the plaintiff has proved his case, is to compensate him for what he has lost as a result of the defendant's negligence. The loss of well-being is as much a loss as an amputation. The

2. Appellant attempts to buttress its contention by emphasizing appellee's pre-existing vein condition. However, because a tortfeasor must take the victim as he finds him, the tortfeasor is liable for the full extent of the victim's injuries. Thus, a tortfeasor remains responsible for the victim's injuries, even if the victim's particular sensibility resulted in more harm than the tortfeasor could have foreseen. *Tabor v. Miller,* 389 F.2d 645 (3d Cir. 1968), cert. denied, 391 U.S. 915, 88 S.Ct. 1810, 20 L.Ed.2d 654 (1968); *Walsh v. Brody,* 220 Pa.Super. 293, 286 A.2d 666 (1971). *See also* W. Prosser, *Torts,* § 262 (4th ed., 1970). Accordingly, appellant's focus on appellee's pre-existing condition does not in any way limit appellant's liability for appellee's injury.

inability to enjoy what one has heretofore keenly appreciated is a pain which can be equated with the infliction of a positive harm." *Corcoran v. McNeal,* supra 400 Pa. at 23, 161 A.2d at 373. Thus, when a tort-feasor's negligence diminishes the plaintiff's well-being, the plaintiff may recover for that loss.

The evidence presented demonstrated that appellee's serious and permanent injuries substantially limited his employment activities as well as his ability to participate in the ordinary daily activities and recreational pursuits he had previously enjoyed. Because loss of such pleasures of life is a separate compensable element of damages in a personal injury action, the trial court correctly instructed the jury regarding appellee's ability to recover damages.

We find that the trial court's ruling and jury instructions were correct and that appellant's contentions are without merit. Accordingly, we affirm the order of the lower court.

JACOBS and PRICE, JJ., did not participate in the consideration or decision of this case.