**Knapp v. Bohmler**

C.P. of Bucks County, no. 94-03092-14-2.

*Mark Tanner,* for plaintiff.
*James McCarthy,* for defendant Larry A. Cutler M.D. and Abington Urological Association.
*John A. Luchsinger,* for defendant Granville Bohmler.

DEVLIN SCOTT, *J.,* May 15, 1997—Plaintiff, Donna M. Knapp, has filed timely motions for post-trial relief following the court's granting of a compulsory nonsuit in favor of defendants, Larry A. Cutler M.D. and Abington Urological Associates, and a jury verdict in favor of defendant, Granville Bohmler. For the reasons discussed below, we deny her motions for post-trial relief.

On July 23, 1992, plaintiff's decedent, Walter J. Knapp, was involved in an automobile accident with Alfred Bohmler[1] in which Mr. Knapp allegedly suffered abdominal injuries. Several days after the accident, Mr. Knapp sought medical attention for abdominal pain and urinary discomfort. After medical consultation, Mr. Knapp was scheduled to have a transurethral prostatectomy to correct his symptoms. The surgery was performed by defendant, Dr. Cutler. A few days after the surgery, while recovering in the hospital, Mr. Knapp went into respiratory arrest as a result of a pulmonary embolus. Despite the hospital personnel's best efforts, he was unable to be resuscitated.

Plaintiff brought a wrongful death and survival action against Bohmler and a medical malpractice action against the remaining defendants. After the close of plaintiff's case in chief, this court granted a motion

---

1. Now deceased for reasons unrelated to this case.

for compulsory nonsuit in favor of defendants, Dr. Cutler and Abington Urological Associates. The jury returned a verdict in favor of defendant Bohmler on the issue of causation.[2]

Plaintiff filed post-trial motions with regard to both Bohmler and Dr. Cutler. We will first discuss the post-trial motion involving Dr. Larry Cutler.

Plaintiff requests removal of the nonsuit in favor of defendants Dr. Cutler and Abington Urological Associates. The standard for granting a defendant's compulsory nonsuit is well established. Viewing the evidence in a light most favorable to plaintiff, a nonsuit is proper if it is clear and free from doubt that a plaintiff has failed to introduce sufficient evidence to maintain the cause of action. Pa.R.C.P. 2232(d), *Schecter v. Watkins,* 395 Pa. Super. 363, 577 A.2d 585 (1990), *alloc. denied,* 526 Pa. 638, 584 A.2d 320 (1990).

In order to prove a cause of action for medical malpractice, plaintiff must establish four separate and distinct elements: (1) a duty owed to the patient by the medical provider; (2) a breach of that duty; (3) that the breach of the duty was the proximate cause of or a substantial factor in bringing about the harm suffered; (4) that the damages allegedly suffered by the plaintiff were the result of the harm. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). Generally, in medical malpractice actions, expert medical testimony is necessary. In addition to its bearing on whether or not the defendant's conduct was negligent, such testimony is needed to establish that the injury in question did,

---

2. The court notes that the negligence of defendant Bohmler was stipulated by his counsel at trial. Additionally, defendant Abington Memorial Hospital was dismissed by the parties' stipulation prior to trial.

with a reasonable degree of medical certainty, stem from the negligent act alleged. *Houston v. Canon Bowl Inc.,* 443 Pa. 383, 278 A.2d 908 (1971).

The compulsory nonsuit was granted by the court because we found that plaintiff's expert gave no testimony linking the alleged negligence to the harm suffered by plaintiff's decedent. Plaintiff contends that she presented sufficient evidence of causation for that question to go to the jury. Citing *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), and its progeny, plaintiff argues that she only needs to introduce evidence that defendant was negligent by failing to exercise reasonable care and that such failure "increased the risk of harm" to plaintiff. In this case, the alleged negligence is "hasty urological intervention." (Vol. II, p. 188.) If plaintiff does so, it should be left to the jury to decide whether or not performing the surgery (at the time it was done) was a "substantial factor" in producing the harm, in the instant matter, Mr. Knapp's death. *Id.*

Plaintiff's argument fails for the reasons discussed below, specifically the absence of evidence on the issue of causation.

The first step in a *Bashline* analysis is to determine whether or not the standard of care given to plaintiff deviated from good and acceptable medical practice. *Mitzelfelt, supra* at 62, 584 A.2d at 895. Knapp's expert, Dr. John M. Murphy, testified that to a reasonable degree of medical certainty the surgery should not have been performed at the time it was. As such, the testimony of plaintiff's expert satisfies the first prong.

The second step is to determine whether the acts complained of caused the actual harm suffered by the plaintiff. In other words, that the deviation from accepted medical standards increased the risk of harm to the patient. *Id.* It is this causation step that plaintiff fails.

Plaintiff has the burden to show that the "hasty urological intervention" increased the risk of pulmonary embolus to Mr. Knapp. However, her expert only offered testimony that this type of procedure exposed the patient to pulmonary embolus. The timing of the surgery was never linked to the harm. Only a general question was put to Dr. Murphy. It read, "Does the performance of surgery, a transurethral prostatectomy, increase the risk of pulmonary embolus?" (Vol. II, p. 187.) Additionally, the surgeon performing the operation, Dr. Cutler, testified that any surgery carries a risk of pulmonary embolus. (Vol. I, p. 139.) Neither expert ever said that having "this particular surgery at the time it was performed" increased the risk of harm to Mr. Knapp. This is necessary to show the causal connection.

Dr. Murphy also testified that the surgery would eventually have to occur. (Vol. II, p. 188.) There would still be the same risk of pulmonary embolus had the surgery been performed according to Dr. Murphy's timetable. Dr. Murphy indicated that this surgery, like any invasive procedure, carries certain inherent risks, one of which is pulmonary embolus. Therefore, regardless of when the surgery took place, there was a chance that a pulmonary embolus may result. Even assuming that Mr. Knapp's surgery was performed too soon, the same risk of a pulmonary embolus existed at that time as any other. Thus, if the same risk was involved no matter when the surgery was performed, the timing of Dr. Cutler's procedure could in no way "increase" the risk of harm to Mr. Knapp.

Plaintiff argues that the court misinterpreted Dr. Murphy's testimony. It is her contention that Dr. Murphy implied the surgery should only have been done if Mr. Knapp's bladder "gained its tone and normal capacity." *Id.* at 188. Dr. Murphy actually testified "that the proper

procedure should have been drainage by suprapubic cystostomy till the bladder got its tone back and surgery performed when that had occurred." *Id.* Having reviewed the doctor's testimony at length and having looked at the plain meaning of the language contained therein, this court cannot find the inference that plaintiff claims. Plaintiff had ample opportunity to explore this issue with Dr. Murphy and did not.

Plaintiff is missing a step in the process of proving the prima facie case for medical negligence under the *Bashline* standard. Plaintiff makes the jump from the alleged negligence to the harm without connecting the two with expert testimony going to causation. We can find no testimony from Dr. Murphy saying that the premature surgery itself increased the risk of pulmonary embolus to Mr. Knapp. In a medical negligence action, absent testimony making the connection between the negligence and the harm suffered, a plaintiff cannot prove causation. *Bowser v. Lee Hospital,* 399 Pa. Super. 332, 582 A.2d 369 (1990), *alloc. denied,* 527 Pa. 614, 590 A.2d 755 (1991). When a plaintiff has failed to introduce sufficient evidence to establish an element of a cause of action at trial, compulsory nonsuit is proper. *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983).

With regard to the post-trial motions involving defendant Granville Bohmler, Knapp asked this court to grant a new trial. Plaintiff raises three points of error:[3]

"(1) Defense counsel should not have been permitted to read in testimony of Dr. Roth concerning his lack of opinion.

---

3. Plaintiff originally raised four points of error, but has withdrawn one argument and the court will not address it. See plaintiff's memorandum of law in support of her motion for post-trial relief, p. 17.

"(2) The court failed to instruct the jury concerning the liability of an original tort-feasor for injuries exacerbated by unskilled medical treatment.

"(3) Defendant's affirmative defense that plaintiff's urinary retention might have arisen in the absence of the defendant's negligence should not have been permitted."

We address each of these issues separately:

(1) Defense counsel should not have been permitted to read in testimony of Dr. Roth concerning his lack of opinion.

This argument involves the deposition testimony of Jerry M. Roth M.D. who was Mr. Knapp's physician prior to the accident. Both parties were allowed to read certain parts of his deposition into evidence. Plaintiff introduced portions of testimony to try to establish that Mr. Knapp had no history of urinary difficulties. Defendant introduced other portions of the deposition to establish that Dr. Roth was unable to render an opinion, based on a reasonable degree of medical certainty, as to the relationship between the automobile accident and the ultimate cause of Mr. Knapp's death. The deposition testimony which was offered by defendant at trial involved the following question by plaintiff's counsel:

"Q. Do you have an opinion to a reasonable degree of medical certainty as to the role, if any, that the motor vehicle accident played in connection with the acute urinary retention experienced by Mr. Knapp?

"A. It's difficult for me to give an opinion when as a physician I'm trying to be scientifically accurate. So in terms of rendering an opinion, I cannot because I don't have sufficient scientific data to render an opinion as to the relative nature of the timing of the accident

relative to the pulmonary embolus." (Vol. III, pp. 187-88.)

Plaintiff now seeks the exclusion of her own deposition question on the grounds that it was (a) irrelevant and (b) plaintiff was not able to properly examine Dr. Roth on the issue of causation because Dr. Roth was instructed by his private counsel at the deposition not to answer any questions on the issue.

Deposition testimony of a medical witness may be used at trial for any purpose as long as the proffered testimony is admissible under the rules of evidence. Pa.R.C.P. 4020(a). Evidence is relevant if it tends to make a fact at issue more or less probable. *Lewis v. Coffing Hoist Division, Duff-Norton Co. Inc.,* 515 Pa. 334, 528 A.2d 590 (1987). The testimony of a witness deposed by a plaintiff that furthers the defendant's theory of the case, namely that the accident did not cause the harm, is most certainly relevant.

Plaintiff argues that the jury inferred from the above testimony by Dr. Roth that there was no causal link between the auto accident and Mr. Knapp's pulmonary embolus. Because plaintiff was unable to examine Dr. Roth on this issue, she could not rebut this inference and the testimony should have been excluded.[4] However, plaintiff fails to mention that Dr. Roth also testified that he could not rule out the possibility that the auto accident had an impact on the harm that befell Mr. Knapp. (Vol. III, pp. 189-90.) Additionally, part of the testimony read in by the defense included a statement from Dr. Roth's private counsel that the doctor was not going to offer an opinion on causation. (Vol. III,

---

4. According to the deposition, Dr. Roth's counsel advised him not to answer plaintiff's questions, thereby precluding her from further examination on this issue.

p. 189.) Most importantly, the doctor specifically stated that the reason he could not formulate an opinion was that he did not have "sufficient scientific data to render an opinion," not because he believed there was no causal relationship. Thus, the evidence shows that allowing Dr. Roth's lack of opinion testimony to be read to the jury could not have prejudiced plaintiff in any way. "An evidentiary ruling which [does] not affect the verdict will not provide a basis for disturbing the jury's judgment." See *Atkins v. Pottstown Memorial Medical Center,* 430 Pa. Super. 279, 284, 634 A.2d 258, 260 (1993), citing *Wilson v. Donegal Mutual Insurance Co.,* 410 Pa. Super. 31, 598 A.2d 1310 (1991).

(2) The court failed to instruct the jury concerning the liability of an original tort-feasor for injuries exacerbated by unskilled medical treatment.

Plaintiff next argues that the court erroneously omitted from the charge a portion of the law from the case of *Lebesco v. SEPTA,* 251 Pa. Super. 415, 380 A.2d 848 (1977). The relevant language of the charge given in that case is as follows: "if you find that Mr. Lebesco was injured as a result of the negligence of the SEPTA driver, and if you find that he selected his physicians . . . with ordinary care, then the defendant would be required to compensate him for any additional harm that may have been caused to him by their treatment. . . ." *Id.* at 422, 380 A.2d at 851.

It is plaintiff's contention that because Dr. Cutler's treatment was unskilled, further harm was inflicted on Mr. Knapp, and the charge was necessary to show that Bohmler could be held liable for injuries resulting from Dr. Cutler's treatment.

Declining to give the requested charge was proper for two reasons. First, there is absolutely no testimony that Dr. Cutler's procedure was "unskilled." In *Lebesco,*

defendant's own expert testified that the procedure exacerbated plaintiff's condition. *Id.* In contrast, none of the experts in the pending matter had any criticism of the surgery. The only alleged negligence is that the surgery was performed too soon. Second, this court's instruction to the jury that a particular treatment was "unskilled" would be an impermissible comment on the facts of the case. Finally, we note, the charge given in *Lebesco* made no comment on the skill of the procedure. We find no merit to plaintiff's motion on this issue.

(3) Defendant's affirmative defense that plaintiff's urinary retention might have arisen in the absence of the defendant's negligence should not have been permitted.

Finally, Knapp contends that the court erroneously allowed defendant Bohmler's affirmative defense to be argued to the jury. More specifically, plaintiff insists that there was no expert testimony to a reasonable degree of medical certainty that Mr. Knapp's urinary retention could have occurred in the absence of the automobile accident. Therefore, because there was insufficient evidence, the court should have granted plaintiff's motion to strike Knapp's affirmative defense. We disagree.

Where there is any evidence which alone would justify an inference of the disputed fact, the burden of coming forward with the evidence has been satisfied, and the issue must be submitted to the jury, no matter how strong or persuasive may be the countervailing proof. *Liebowitz v. H.A. Winston Co.,* 342 Pa. Super. 456, 493 A.2d 111 (1985). Dr. Cutler testified that it was possible for a patient with Mr. Knapp's medical history to go into urinary retention without the accident. (Vol. II, p. 22.) Additionally, he testified that no specific event need occur in order to necessitate surgery. The

428

urinary retention may have resulted from the progressing nature of Mr. Knapp's prostate condition. (Vol. II, p. 39.) Certainly, there was testimony in the case that the accident may have played a part in the urinary retention of Mr. Knapp. However, it was clear from Dr. Cutler's testimony that the retention may have occurred without the accident. It was properly left to the jury to decide what role, if any, the automobile accident played in complicating Mr. Knapp's medical problems.

For the reasons discussed above, we deny plaintiff, Donna M. Knapp's, motions for post-trial relief and enter the following order:

## ORDER

And now, May 15, 1997, the post-trial motions filed on behalf of Donna M. Knapp are hereby denied and dismissed.