# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-60792

GERALDINE CHAN, as administratrix of the Estate of Randy Brewer, deceased, and on behalf of the heirs at law and beneficiaries of Randy Brewer, deceased.

Plaintiff-Appellant

v.

ROGER COGGINS, Boyd Bros. Transportation, Inc.

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:05-CV-00254

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff Geraldine Chan ("Chan") appeals the district court's grant of motions to strike expert testimony and for summary judgment filed by defendants Roger Coggins ("Coggins") and Boyd Brothers Transportation, Inc ("Boyd Brothers"). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2001, Coggins was traveling on Interstate-20 ("I-20") West, operating an 18-wheel tractor trailer owned by Boyd Brothers. He exited off I-20 and proceeded along the off-ramp toward the intersection with Gallatin Street. The ramp splits at the intersection, and a separate lane curves to the right for traffic heading northbound onto Gallatin Street.

Two pedestrians, Randy Brewer and Marshall Allen, were panhandling at the intersection. Both had been drinking heavily that day, and Brewer was "pretty drunk" at the time of the events at issue. Confined to a wheelchair, Allen was positioned in the street on the right side of the ramp as Coggins approached the intersection. Brewer stood on the island separating the right and left turn lanes. Coggins drove into the right lane, and to avoid Marshall, moved the tractor-trailer to the left side of the right lane. He brought his truck to a stop at the intersection and waited at the light to proceed north on Gallatin Street. Brewer then approached Coggins's cab, coming within approximately one foot of the driver's side door, and asked for money. Without rolling down the window, Coggins told Brewer that he did not have money and motioned for Brewer to back away from the truck.

There is conflicting testimony about what followed. Coggins testified that after waiving Brewer off, he watched Brewer take a step away from the truck, he engaged his truck, and he moved toward northbound Gallatin Street. Coggins further testified that after he began to move forward, Brewer moved toward the back of the truck and was struck by the trailer tires. Joseph Pettit, a motorist who witnessed the accident while he was stopped on Gallatin Street, testified that Brewer was about a foot away from Coggins's truck, that Coggins waived Brewer to back away, and that Brewer then took about a half a step back from the truck. Brewer testified that he turned his back as he began to step

away from the truck and was pulled under the wheels as the truck moved forward. Coggins drove forward a short distance and the rear wheels of the tractor cab struck Brewer. The wheels ran over Brewer's feet, legs, and buttocks. He later died of those injuries.

After the accident, Brewer filed suit against Coggins and against Boyd Brothers on a theory of respondeat superior, alleging Coggins's negligence was the cause of his injuries. The case was dismissed when Brewer died. The administratrix of Brewer's estate, Geraldine Chan, initiated the present diversity action for wrongful death caused by the alleged negligence of Coggins and Boyd.

Chan retained Victor Holloman, an accident reconstruction expert, to testify as to how Brewer could have been struck by the tractor-trailer without moving himself in front of the truck. He planned to do so primarily through reference to the concept of "off-tracking." Off-tracking refers to the extent to which the rear wheels of a truck deviate from the path of the front wheels while turning. Holloman reviewed the depositions of Brewer, Coggins, and Pettit, the Mississippi Uniform Accident Report for the incident, and photographs related to the case. He did not have access to the tractor-trailer Coggins drove in the accident. He did not conduct any tests to reconstruct the events of the accident. In his expert report and in deposition, Holloman stated his conclusion that after Brewer asked for money, he turned to his left but before he could step away from the truck, he was struck from behind by the truck because Coggins failed to maintain a proper lookout. He acknowledged that he did not have any evidence to rely on that contradicted Coggins's testimony that he watched Brewer step away from the vehicle before he started to move the truck forward. He asserted that due to off-tracking, Coggins would have moved the truck to the left as he moved forward in order to correct for the trailer's off-tracking as he turned right.

Coggins and Boyd moved to strike Holloman's testimony and for summary judgment. After reviewing Holloman's report and conducting a hearing on his proposed testimony, the district court granted the defendants' motion to strike Holloman. The court then granted summary judgment in favor of Coggins and Boyd. Chan appeals both rulings.

## DISCUSSION

### I. Holloman's Expert Testimony

#### a. Standard of Review

This Court reviews the decision to admit or exclude expert testimony for abuse of discretion. General Electric Co. v. Joiner, 522 U.S. 136, 139 (1997). This standard applies to both (1) how the trial court evaluates the expert testimony, and (2) the trial court's ultimate determination whether or not to admit the expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). The trial court enjoys wide latitude in determining the admissibility of expert testimony, "and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007) (internal quotations and citations omitted). If we determine that the district court abused its discretion by excluding evidence, we evaluate whether the error was harmless, "affirming the judgment, unless the ruling affected substantial rights of the complaining party." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003).

#### b. Analysis

The district court determines the admissibility of expert testimony under Fed. R. Civ. P. 702 according to the directions of Fed. R. Civ. P. 104(a). Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). In short, the court must find that the expert testimony is both relevant and reliable before it will be admitted. Id. at 589. To do this, the court determines whether the reasoning

and methodology underlying the expert's testimony is scientifically valid and can be properly applied to the facts of the case. Evaluating the reliability of proffered expert testimony, the district court looks beyond credentials and makes sure that there is an adequate "fit" between data and opinion. See Moore v. Ashland Chemical Inc., 151 F.3d 269, 276 (5th Cir. 1998). While Daubert lists several factors that may be considered in assessing the reliability of expert testimony, the Supreme Court has since emphasized that the analysis is a flexible one. Particular Daubert factors may be more or less pertinent to the district court's inquiry, depending on the nature of the issue, the particular expertise, and the subject of the expert's testimony. Kumho Tire, 526 U.S. at 150. The objective is that the district court make certain that an expert, "whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

Chan argues that the district court abused its discretion in striking Holloman's testimony because Holloman's credentials and experience in accident reconstruction qualify him to provide expert testimony about the cause of the accident. She further argues that Holloman adequately validated his hypothesis by reference to the scientific concept of off-tracking, and the district court erred by making improper factual determinations to reject the expert's conclusion. Coggins responds that the district court properly exercised its discretion in ruling that Holloman's testimony lacked a scientific basis and was based on insufficient facts.

Holloman's credentials, previous testimony in a distinguishable case, and Chan's citation of one Pennsylvania case allowing expert testimony regarding off-tracking do not persuade us that it was an abuse of discretion for the trial court to determine that his expert opinion in this case was not reliable. "A court may conclude that there is simply too great an analytical gap between the data

and the opinion proffered." Moore, 151 F.3d at 277. Although the district court's opinion does not provide a lengthy review of its analysis of Holloman's expert testimony or the reasoning behind the court's conclusion that it lacked scientific basis, there was no abuse of discretion in striking the testimony. A review of the record amply supports the district court's conclusion that because Holloman's opinion about the cause of the accident lacked a scientific basis and was contrary to the facts in evidence, Holloman was not qualified under Rule 702 to opine whether Coggins negligently ran over Brewer.

Chan relies heavily on the fact that Holloman has previously testified as an expert witness, pointing to Luckett v. Choctaw Maid Farms, Inc., 307 F. Supp. 2d 826, 830-31 (S.D. Miss. 2004). Although Holloman was qualified as an expert in the case, Chan's reliance on this fact is misplaced. Holloman testified regarding improperly functioning brakes, not off-tracking, and based his opinion on, among other facts, the brake maintenance records for the truck in question. Id. Clearly his factual basis and analytical methodology were more directly tied to the subject of his testimony. In any event, being qualified as an expert in the circumstances of one case does not qualify one as an expert in all future cases.

Chan cites one case in which an expert testified about off-tracking to support her argument that off-tracking is a judicially-recognized and accepted phenomenon, and therefore the district court abused its discretion by excluding Holloman's testimony. In Lebesco v. Southeastern Pennsylvania Transportation Authority, 380 A.2d 848, 850 (Pa. 1977), the state court allowed expert testimony regarding off-tracking, reasoning that it would aid the jury in determining whether it was a factor in the accident giving rise to the suit. Beyond Lebesco, research uncovered only two other instances in federal or Mississippi caselaw that discussed expert testimony of off-tracking, both clearly distinguishable from

this context.[1] The fact that off-tracking has been discussed in other cases is not persuasive on the issue of whether the district court abused its discretion in either the manner of evaluating Holloman's proposed testimony or the district court's ultimate conclusion that Holloman's discussion of off-tracking did not provide a sufficient scientific basis for his opinion.

Chan explains that the amount of off-tracking increases with the length of the vehicle and sharpness of the turn, apparently arguing that because the concept is relevant to the case it was an abuse of discretion for the district court to disallow the testimony. This argument does not undermine the district court's finding that Holloman's testimony lacked scientific basis.[2] Even if the concept is relevant, it does not necessarily follow that Holloman's application of the concept to the facts of the case is a proper "fit".[3] "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Kumho Tire, 526 U.S. at 157 (rejecting expert's assertion that his own methods were accurate) (internal citation omitted).

Finally, Chan argues that while portions of Holloman's opinion were contrary to Coggins's testimony, they were consistent with Brewer's testimony.

---

[1] Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 436 (1978) (expert testifying that double trailers safer than singles due to reduced off-tracking, among other factors); Henderson v. Norfolk So. Corp., 55 F.3d 1066, 1068, 1070 (5th Cir. 1995) (expert testifying that extreme off-tracking of trailer caused by defective slide assembly).

[2] Further, the record shows that off-tracking was not the cause of the accident. Brewer was on the outside of the cab's turning radius, not inside where he might have been struck by off-tracking wheels of the trailer. Even if the front wheels of the truck's cab were turned sharply left to correct for additional off-tracking, he was parallel to the cab at the time and was not struck by the front wheels.

[3] The record demonstrates that Holloman did not follow the basic analytic framework of the scientific method, conduct any basic tests of his assumptions, or work with concrete facts about positioning, speed, tire direction, etc., despite his assertion that these were among the factors that led to his conclusion that it was Coggins's driving errors that caused the accident.

On the contrary, a review of the witnesses' depositions, Holloman's deposition, and his expert report demonstrates that Holloman's reconstruction of the accident also conflicts with Brewer's testimony of his position at the time of the accident.

## II. Summary Judgment

### a. Standard of Review

This Court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). A fact is "material" if it "might affect the outcome of the suit under governing law." Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Evaluating a motion for summary judgment, the court views the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. Moore, 233 F.3d at 874. But conclusory allegations, unsubstantiated assertions, or a mere "scintilla of evidence" will not defeat summary judgment. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."). Summary judgment is mandated if the nonmoving party fails to make a showing of evidence sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### b. Discussion

Chan asserts that even without Holloman's testimony, there is conflicting testimony about the events of the accident and sufficient circumstantial evidence

to support a jury finding of negligence by Coggins under Mississippi law. Coggins and Boyd argue that they are entitled to summary judgment because the case contains no evidence that Coggins was negligent.

Under Mississippi law the elements of negligence are: duty, breach, causation, and damages. Magnusen v. Pine Belt Inv. Corp., 963 So.2d 1279, 1282 (Miss. Ct. App. 2007). Negligence may be proved by circumstantial evidence, "provided that the circumstances are sufficient to take the case 'out of the realm of conjecture and place it within the field of legitimate inference.'" Thomas v. Great Atlantic & Pacific Tea Co., Inc., 233 F.3d 326, 329-30 (5th Cir. 2000) (quoting K-Mart Corp. v. Hardy, 735 So. 2d 975, 981 (Miss. 1999)). The jury must be able to make a reasonable or reliable inference about negligence from the circumstantial evidence. Mississippi Dep't of Transp. v. Cargile, 847 So. 2d 258, 263 (Miss. 2003).

Chan has not offered a scintilla of evidence of negligence on the part of Coggins. No one disputes that Coggins's truck came to a complete stop before Brewer ever approached the truck. Brewer then either took a small step away or began to turn.[4] Brewer was not on the inside of the turning radius of the truck, so any off-tracking by the trailer wheels did not threaten him. Furthermore, he was struck by the wheels of the truck, not the off-tracking trailer. None of the witnesses place Brewer in front and to the left of the cab of Coggins's truck, the only position where a forward movement with the wheels turned extremely to the left might have struck Brewer. Brewer himself testified that he was even with the door of Coggins's truck. Indeed, the two had just finished communicating with each other when Coggins engaged the truck to pull away.

---

[4] Although Coggins and Pettit testified that he stepped into the path of the truck, defendants argue that, even ignoring that testimony, Chan has not provided evidence explaining how Coggins could have struck Brewer, who was at least a foot or two away from the cab before Coggins saw him step back.

All parties agree that Brewer was standing to the side of the truck, at least a foot away from the cab door, at the time that the truck began moving. Coggins's uncontested testimony is that he watched Brewer in his side mirror as he engaged the truck and began to move. Chan has not put forward sufficient evidence to support a finding that Coggins breached a duty of care to Brewer, a pedestrian already outside of the path of the truck and standing to the side of the vehicle. Chan has not provided evidence that would take this case out of the realm of conjecture. See Thomas, 233 F.3d at 330. Because there is no evidence that Coggins breached any duty to Brewer to cause the accident, Chan cannot establish the elements of negligence. Brewer was already out of the truck's path, and plaintiff has put forward no evidence of any negligent operation of the truck by Coggins. Because there are no material facts at issue, we affirm the district court finding of summary judgment for the defendants.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.